Davies, J.
The provisions and effect of the act of April 14, 1860, have been much discussed in this court, and it maybe regarded as settled: 1..That offences committed prior to the passage of that act, the offender cannot be punished in conformity with it, as it substitutes a different punishment for the crime of murder from that prescribed by the laws of the State at the time the offense was committed. It followed from this that no person could be punished for the crime of murder in the first degree where the offence had been committed prior to the act of April, 1860, so long ás the provisions of that act continued in force. (Hartung v. The People, 22 N. Y. 95. Same v. Same, March T. 1863; Shepherd v. The People, 25 N. Y. 406.) 2. That a law changing the punishment for offenses committed before its passage is ex post facto and void under the constitution, unless the change consists in the remission of some separable part of the punishment before prescribed, or is referable to prison discipline, or penal administration, as its primary object. 3. That the punishment of death was retained by the'act of April 14th 1860; that the time and manner implicating the death penalty had not been provided for by the terms of that act; and that the provision of the revised statutes, *126 fixing such time and manner, having been expressly repealed could not be invoked, to’ supply such omission.
4. That in reference to the crime of murder in the first degree, committed after the passage of that act, and while it remained in force, the offender could be convicted ánd punished pursuant to the provisions of that act, and that the proper sentence, upon the conviction for that crime, under that act, was that the prisoner should be sentenced to suffer the punishment of death, and should at the same time be sentenced to confinement at hard labor, in the State prison, until such punishment of death should be inflicted. (Lowenberg v. The People, 27 N. Y. R. 336; Jeffords v. the same, January, 1864.)
At the time, therefore, of the commission of the offense, for which the plaintiff, in error, has been convicted, the punishment prescribed by law, was that he should suffer death therefor, and that until such punishment of death should be inflicted, he should be confined at hard labor in the State prison. If, therefore, the provisions of the act of 1860 were in full force at the time of' the trial, conviction and sentence of the prisoner, the sentence pronounced must be declared to "be illegal, as unauthorized by the terms of that act." The legislature, by the act of April 12th 1862, and which was in force as a law at the time, of the sentence, changed the punishment for the crime of murder in the first degree by a revisal of the provisions of the revised statutes, which directed the manner in which persons sentenced to death should be executed, and made it obligatory on the court to fix the day of sentence not less than four weeks nor more than eight weeks from the time such sentence was pronounced. By section second of the latter act, it is declared that no offense committed previous to the time when the act should take effect, should be affected by that act, except that when.any punishment should be mitigated by its provisions, (that is, by the provisions of the act of April, 1862); such provisions should control any *127 judgment to be pronounced after that act should take effect, for any offenses committed before that time.. The learned justice, who tried the prisoner and pronounced the sentence of death upon him, undoubtedly acted upon the idea that the provisions of this section were applicable to the present case, and that the punishment for the. crime of murder in the first degree, had been mitigated by the law of 1862, and that consequently the punishment prescribed by the revised statutes was applicable. For by the act of 1860, the prisoner convicted of the crime of murder in the first degree was to be punished with death, and to be confined at hard labor in the State prison until such punishment of death should be inflicted. As no person so sentenced or imprisoned could be executed in pursuance of such sentence, within one year from the day on which such sentence should bo pronounced, it followed that every person so sentenced to the punishment of death had also to be punished by imprisonment in the State prison, at hard labor, at least for the term of one year. It cannot be doubted that these punishments were separable, and that it was competent for the legislature, in relation to offenses committed while the act of 1860 was in force, to declare that either of them might be omitted. Such omission resulted in a mitigation of the punishment.
But the main difficulty in the present case is, the punishment revised and provided for by the act of 1862, is different from that in 1860, in other most important particular's. It is true that both acts declare that persons convicted of the crime of murder in the first degree, shall be punished with death. But by the act of 1860, such punishment could not be -inflicted within one year from the day on which such sentence of death should be passed, nor until the governor of the State should issue his warrant under the great seal thereof, commanding such sentence to be carried into 'execution. We see, therefore, the difference in the punishment for the crime of murder, as prescribed in the act *128 of 1860, and that prescribed by the revised statutes! This court had occasion to consider this difference in the case of Hartung v. The People, (supra), and deemed it radical. It was then said: “The change wrought by the act of 1860 in the punishment of existing offenses of murder, does not fall within either of the exceptions. It is to be construed to vest in the governor a discretion to determine whether the convict should be executed or remain a perpetual prisoner at hard labor. This would only be equivalent .to what he might do under the authority to commute a sentence. But he can, under the constitution, only do this once for all: if he refuses the pardon, the convict is executed according to the sentence. If he grants it, his jurisdiction of the case ends. The act, in question, places the convict at the mercy of the governor in office at the expiration of one year from the time of the conviction, and of all his successors during the lifetime of the convict. He may be ordered to execution at any time, upon any notice, or without notice. * If we stop here the change effected by the statute, is between an execution within a limited time to be prescribed by the court, or a pardon or commutation of the sentence during that period, on the other hand, and the placing the convict at the mercy of the executive magistrate for the time, and his successors, to be executed at his pleasure at any time after one year, on the other; the sword is indefinitely suspended over his head, ready to fall at any time. It is not enough to say,. even if that can be said,-that most persons would probably prefer such a fate to the former capital punishment. It is enough to bring the case within the condemnation of the constitution, that it changes the punishment after the commission of the offense, by substituting for the prosecuted party a different one. We have no means of saying whether the one or the other would be the most severe in a given case. That would depend upon the disposition and temperament of the convict. The legislature cannot thus experiment upon the criminal laws.” *129 These conclusions were arrived at without any reference to the prescription of at least one year imprisonment at hard labor in a State prison, in addition to the punishment of death. We thus have one authoritative exposition of the different punishments for murder in the first degree as prescribed by the revised statutes and in the law of 1860, and that the change of punishment in that prescribed in the latter act, by substituting for the penalty prescribed by the - revised Statutes, a different one, renders the act ea: post facto and void. The act of 1860, sought to inflict a different punishment for the crime of murder in the first degree than was prescribed for that offense by law at the time of its commission. This rendered the act void, irrespective of the consideration of the additional punishment at hard labor in a State prison, for one year or more. If, therefore, the punishment declared by the act was obnoxious, in that it changed that prescribed by the revised statutes, which were in force at the time the offense was committed in the Hartung case, it logically follows that for the same reason the punishment prescribed by the revised statutes, cannot be inflicted upon a criminal whose offense was committed while ■ the act of 1860 was in force, and while that prescribed by the revised statutes was suspended, and which offense must be punished, if at all, in the manner pointed out in that act. Whether it can be so punished or not, depends upon the saving clause in the second section of the act of April 12 1862, and the act of April 24, 1863.
The second section of the act of April, 1862, declares that no offense committed previous to the time when that act shall take effect shall be affected by that act, except that when any-pumshment shall be mitigated by the provisions of that act, such provision shall control any judgment to be pronounced after the said act shall take effect, for any offences committed before that time. And section seven of that act declares that the following additional section shall be added to title one, chapter one, of the fourth *130 pari of the revised statutes: “ Every person who shall be convicted of murder in the second degree, and of arson in the first degree as defined in that act, shall be punished by imprisonment in a state prison for any term not less than ten years.” By the provisions of the act of 1860, arson in the first degree was punishable with death and imprisonment at hard labor in a state prison until such punishment of death should be inflicted; and every person convicted of murder in the second degree was to be sentenced to undergo imprisonment in one of the State prisons, and be kept in confinement at hard labor during natural life. We see, therefore, what punishments were mitigated by the act of 1862, and that in reference to crimes of murder in the second degree and arson committed before that act took effect, they were to be punished with the milder or mitigated punishments prescribed by that act, instead of those prescribed when the same were committed. All other offenses committed previous to the time that act took effect were to be unaffected by it. The crime of murder in the first degree of which the prisoner has been convicted was, therefore, excepted from and unaffected by that act, and the prisoner upon his conviction should have been sentenced to the punishment prescribed by the act of 1860.
Great changes were introduced into the criminal code of this State in relation to the punishment of crimes by the revision of our statute law in 1830. The repealing act contained a saving clause like that found in the act of 1862, in these words: “That ho offense committed previous to the time when any statutory provisions shall be repealed shall be affected by such repeal, except that where the punishment shall be mitigated by the revised statutes such mitigated punishment shall be applicable, though the offense was committed before that time.” In The People v. Phelps (5 Wend. 19), a question was made as to the application of the Bevised Statutes to that case. The offense was committed before they took effect, and the indictment *131 and trial were subsequent. Chief Justice Savage, in delivering the opinion of the court, observed that if this saving clause was applicable to the case, there could be no doubt that the indictment was valid; and that those statutes did operate upon thát case, he thought there could be no question. He said : “ The character of the offense remains as it was when committed, and the punishment cannot be enhanced by any act taking effect subsequently; but the proceedings must be conducted under the revised statutes. The prosecution was commenced and carried on since the first of January, and during that period the revised statutes and no other were in force. Offenses committed under the old statutes were liable to certain punishments, and no greater can be inflicted; but the prosecution must be conducted by virtue of the statutes in force when the proceedings are had.”
In view of these provisions of the statutes and these authorities, we find that the punishment prescribed by the act of i860 can only be inflicted for offenses committed while that act was in force, but that all prosecutions for such offences commenced since the act of 1862, must be conducted by virtue of the statutes in force when the proceedings are had. The saving clause in the act of 1862 preserves intact the punishment prescribed by the act of 1860, for all offenses committed after that act went into effect, and before its repeal, except when by the act of 1862 the punishment had been mitigated, and in such case the mitigated punishment is to be inflicted. But although a part of the punishment on conviction for the crime of murder in the first degree, namely, that of imprisonment in the State prison until the death penalty should be executed, was taken away by the act of 1862, and which might lawfully be done, as it was clearly separable from the other, and was an increase and in. addition to the death penalty, yet we see that the punishment of death, for the crime of murder in the first degree, as contemplated by *132 the act of 1860, is a very different punishment from that inflicted for the same offense by the provisions of the revised statutes which were brought into operation by the act of 1862. But for the saving clause of the act of 1862, the prisoner could not legally be punished for the crime whereof he has been convicted. The judgment in this case was pronounced on the assumption that the prisoner was to be punished according to the act of 1862. We think this view of the law was erroneous, and consequently the .sentence and judgment were erroneous and must be reversed. It would follow from these considerations and the authority of the case of The People v. Shepherd, (25 N. Y. 406), that a wrong judgment having been pronounced, although the trial and conviction were regular, this prisoner could not be subjected to another trial, and would be entitled to his discharge. That would unquestionably be so but for the act of April 24, 1863. In the case of Lowenberg, (supra), we held that the provisions of that act had no application to a case pending in this court at the time it took effect as a law. In the present case that act became operative before the judgment and sentence were pronounced and given, and before the writ of error was prosecuted to this court. It was, therefore, in force when the writ of error in this case was prosecuted, and its provisions are applicable to the duty imposed upon this tribunal, by virtue of that proceeding. This act declares that the appellate court shall have power upon any writ of error, when it shall appear that the conviction has been legal and regular, to remit the record to the court in which such conviction was had, to pass such sentence thereon as the said appellate court shall direct. But for the authority conferred upon this court by this statute, it would have had no power, upon reversal of the judgment of the supreme court, either to pronounce the appropriate judgment or remit the record to the oyer and terminer to give such judgment. This is well settled by authority. (The *133 King v. Bounce, 7 Adol. and Ellis, 58; Shepherd v. Commonwealth, 2 Met. 419; Christian v. Commonwealth, 5 ib. 530; The King v. Ellis, 5 Barn. and Cress. 395; Phillips v. Barry, 1 Lord Raymond, 5; The People v. Taylor, 3 Denio, 91; O'Leary v. The People, 4 Parker Crim. R. 187; Shepherd v. People, supra.) But the power to remit the record in the present case is ample, and it was intended by the legislature to confer it under the circumstances now presented. There is no question made as to the legality or regularity of the conviction of the prisoner, and we being of the opinion that the only error committed was in not pronouncing the proper sentence and judgment upon such conviction, it is made our duty by this statute to.remit the record to the Kings county'oyer and terminer to pronounce upon the conviction the proper judgment. And this court does accordingly direct that the record in this action be remitted to the court of oyer and terminer of Kings county, and that such court do sentence the prisoner to suffer death for the crime whereof he stands convicted, and that he be confined at hard labor in the State prison at Sing Sing until such punishment of death shall be inflicted.
Wright, Sellen and Ingraham, JJ., concurred.
Denio, Ch. J.
The conclusions to which I have come upon the examination of this case are the following:
1. As the offense was committed while the act of 1860 was in full operation, the judgment should have been the one prescribed by that act, namely, that the convict should suffer the punishment of death, and that he should be confined at hard labor in the State prison until such punishment should be inflicted; but that he should not be executed, in pursuance of such sentence, within one year from the day of passing such sentence, nor until the whole record of the proceedings should be certified by the clerk of the court of oyer and terminer of Kings county, under- the seal *134 thereof, to the governor of this State, nor until a warrant should he issued by the governor under the great seal of the State, directed to the sheriff of the county in which the State prison shall be situated, commanding the said sentence of death to be executed. The point that the act does not, in terms, prescribe the punishment of death, has been considered by this court and held not to be tenable. (Lowenberg v. The People, 27 N. Y. R. 336.)
The judgment of the oyer and terminer, which was affirmed by the supreme court, condemned the convict absolutely to the punishment of death by hanging on a day about five months after the conviction, without requiring any warrant to bé issued by the governor. This was a wide departure from the mandate of the statute, and was clearly erroneous.
It is claimed to have been justified by the effect of the act of April 12, 1862 (Ch. 197, p. 368.) The first section repeals the act of 1860, and another act not material to the present purpose. But that repeal was wholly prospective, and did not affect the punishment of offenses committed before such repeal. This is expressly declared by the second section, winch is in these words: “ No offense committed previous to the time when this statute shall take effect shall be affected by this act, except that where any punishment shall be mitigated by the provisions of this act, such provision shall control any judgment; to be pronounced after the said act shall take effect for any offenses committed before that time.”
It is argued that the word offense, as first used in the section, does not embrace the idea of punishment. But I am of opinion that such a construction would be altogether too narrow. The whole scope of the statute concerns the punishment of crimes, and when it is said that no offense committed before it should come into operation should be affected by it, the meaning is extremely clear, that the punishment which it prescribes should not be visited upon the *135 persons committing the offenses which, on account of the time they were committed, are excluded from its scope. If it were otherwise doubtful, the exception, which declares that a mitigated punishment should, notwithstanding the general language, be applied to the case of such former offenders, makes the sense very plain. ^
2. The remaining question is, whether the judgment should be reversed and the prisoner discharged, according to the former rule, or the record be remitted to the oyer and terminer to pass a legal sentence upon the conviction. This latter course is now authorized by statute. (Laws 1863, chap. 226, p. 406.) The conviction was legal, and the sentence only was erroneous. The only question is whether the act, having been passed after the conviction, though before judgment was given in the supreme court, could be applied to the case. I am of opinion that it can be applied. The forms of judicial proceedings are under the control of the legislature. The case is not within the constitutional provision which forbids a person being twice put in jeopardy for the same offense. A person is said to be put in jeopardy only when he is a second time tried upon a criminal accusation, but the term has no relation to the reversal of an erroneous judgment and pronouncing a legal one, pursuant to one legal conviction. It may be of some importance to inquire when the existing judgment was pronounced in the oyer and terminer in reference to the time of the passage of the act of 1863. The narrative part of the record would seein to show that it was on the 20th April, 1863, which is prior to the passage of the act. But the record also states that on the 25th June following, a motion was made in the oyer and terminer for the arrest of judgment, and that it was denied on the 3d day of August ensuing. Such a motion can only be made on the verdict, and it must be before judgment. Taking the record together, we must intend that the sentence was pronounced on or after the third day of August. The case, then,, is *136 this: After the verdict had been given, and before sentence, the legislature declare, in effect, that when an erroneous judgment is given in a court of original criminal jurisdiction, the supreme court may on error reverse the judgment alone; but if there be no error in the trial or verdict, the record is to be remitted, to the end that a proper judgment may be pronounced. If it could be maintained that the legislature could not rightfully interfere after the judgment had been pronounced in such a manner as to deprive the prisoner of the full benefit of a writ of error under the existing laws, and of the right to have the judgment reversed and to be discharged, the principle would not aid the plaintiff in error, for such was not the order of the events. I conclude, therefore, that the supreme court should have reversed the judgment which was actually given, and have remitted the record to the oyer and terminer, with directions to pronounce the judgment prescribed by the act of 1860—the form of which has been indicated. If I am sustained by my brethren in these views, such is the judgment which must be given on the writ of error.
Hogeboom, J.
The first ground of objection heretofore taken by the prisoner, that to the sufficiency of the indictment, is no longer seriously pressed, and is untenable.
The more difficult question arises under the second objection, to wit: that the sentence pronounced upon the prisoner was without authority of law, and .therefore, that the judgment should be reversed and the prisoner discharged. It is insisted that the offense was committed and the trial had, while the provisions of the act of 1860 were in force, while the punishment imposed was not in accordance with that prescribed by the act of 1860, but in* accordance with the provisions of the revised statutes which were not in force at the time of the sentence, and were not, at all events, applicable to this particular offense. It is further insisted *137 that the act of 1860 did not in express terms, or even by necessary implication, impose the punishment of death for the offense of murder in the first degree, nor prescribe any mode in which the punishment should be inflicted, and that as the punishment of death in the mode prescribed in the revised statutes was by the act of 1860, expressly abolished, capital punishment could no longer be inflicted, first, because it was not prescribed as á punishment, and second, because no mode of inflicting it was declared.
I have, heretofore, expressed the opinion in the case of The People v. Hartung (23 How. 314), that capital punishment, for murder in the first degree, was not abolished by the act of 1860, and that it was competent for the legislature by a subsequent act (as they did in 1861), to declare the mode in which such punishment should be inflicted, even as to offenses committed before the passage of the act of 1860. To those opinions I still adhere. They are those which prevailed in the court below, except in a single particular, to which I shall presently refer. The court of appeals also, in the same case oí' Hartung v. The People (22 N. Y. R. 95), were of the opinion that the punishment of death for the crime of murder in the first degree was not abrogated by the act of I860, and this opinion was reiterated in the case of Lowenberg v. The People (26 How. 202.)
The offense of which the prisoner was convicted was committed on the eighteenth day of October 1861. The indictment was found at a court commenced on the 10th day of November 1862. According to the record presented to us, the prisoner appeared and pleaded to such indictment on the 13th day of April 1863, and was tried and convicted thereon, at a court held on the 20th day of April 1863, and thereupon, according to the record, he was adjudged to be removed to the common jail of Kings county, and there detained until the 23d day of September, (then), next and thence removed to the place of execution, and there *138 hung by the neck until he be dead. Judgment appears to have been signed on the 3d day of August 1863. There is appended to .the record proper, a statement in the error book, that on the 25th day of June 1863, a motion was made in behalf of the prisoner in arrest of judgment, before the court of oyer and terminer, and that such motion was on the 3d day of August 1863, denied. On the 15th day of August 1863, a writ of error from the supreme court to the court of oyer and terminer was allowed by Justice Brown, and on the 18th day of December 1863, the judgment of the court of oyer and terminer was affirmed by the supreme court of the 2d district. On the 21st day of December 1863, the same justice allowed a writ of error from this court to the supreme court with a stay of proceedings thereon, and the case comes before us on the return to that writ of error, upon the record alone, without any bill of exceptions..
The course of legislation applicable to the' case has been as follows: On the 14th day of April 1860 (Laws of 1860, chap. 410), the legislature passed the act already commented on, “in relation to capital punishment, and for the more certain punishment of the crime of murder.” This act, as before stated, while it assumes and substantially declares that there are crimes punishable with death, and that persons convicted thereof shall be sentenced to suffer such punishment; also declares that such punishment shall be preceded by at least one year’s .imprisonment in the State prison, and shall not be inflicted until a warrant shall be issued by the governor, commanding the sentence of death to be carried into execution. It contains no express provision directly prescribing the punishment of death for any offense, unless it be contained in the first section of the act, which is as follows: “No crime hereafter committed except treason and murder of the iirst degree, shall be punished with death, in the State of New York.” It expressly repeals those sections of the revised statutes, which pre *139 scribe the punishment of death for murder, or so modifies the same as to require the punishment to be administered according to the provisions of the act of 1860. Among the sections thus repealed, is section 25 of title 1 of chapter 1 of part 4 of the revised statutes, which is as follows:— “The punishment of death shall in all cases be inflicted by hanging the convict by the neck until he be dead.”
On the 17th day of April, 1861, (Laws of 1861, chap. 303,) the legislature, by an act then passed, expressly revived and reinstated all the aforesaid sections of the revised statutes, (which had been repealed or modified by the act of I860,) so far as respected offenses committe’d previously to the 4th day of May, 1860, (being the day when the act of 14th April, 1860, took effect).
On the 12th day of April, 1862, (Laws of 1862, chap. 197,) the legislature expressly repealed the two last mentioned acts of 1860 and 1861, and amended the revised statutes m various particulars in regard to the offense and punishment of murder, making two degrees of the offense, and prescribing the punishment of death for murder in the first degree. In this statute is the following section: “ § 2. No offense committed previous to the time when this statute shall take effect shall be affected by this act, except that where any punishment shall be mitigated by the provisions of this act, such provision shall control any judgment to be pronounced after the said act shall take effect, for any offenses committed before that time.”
By a comparison of dates it therefore appears that the offense in question was committed after the passage of the act of 1861, and prior to the passage of the act of 1862, and that the indictment was found and the trial and conviction had subsequent to the passage of the last mentioned act. If the words “no offense committed previous to the time when this statute shall take effect, shall be affected by this act,” in the section just quoted, cover not only the offense itself but any judicial proceedings and *140 sentence which may be had for its punishment, then the act of 1862 has.no bearing whatever upon the case under consideration, and the punishment of the offense must be governed entirely by the act of 1860; for the offense was committed previous to the act of 1862; and the act of 1861 relates exclusively to offenses committed prior to May 4, 1860, and this offense was committed since. Now the act of 1860, if applicable to this case, while it required a sentence of death to be pronounced on a conviction for a crime punishable with death, expressly required, also, that the convict should, at the same time, be sentenced to confinement at hard labor in the State prison until such punishment of death should be inflicted; which latter punishment could not be inflicted except upon the warrant of the governor and after the lapse of a year.
The sentence pronounced in this case did not in any • degree conform to this law, for it contained no clause subjecting the prisoner to confinement in the State prison, and it expressly directed the execution of the sentence of death long before the lapse of a year, and without any warrant from the governor.
It becomes necessary, therefore, to give a construction to the section in question.
I am of opinion, in the first place, that it applies to the present case, inasmuch as the offense was committed before the act of 1862 took effect. In the next place, it is clear that the offense was not affected by the act; and hence that in all particulars connected with the character and grade of the offense they must be determined by the prior law. The only prior law then in existence was that of 1860. I am further of opinion that the legislature, in saying that no offense committed previous to the passage of the act should be affected by it, intended also to say that nothing connected with the offense, whether in regard to its constituent elements or the mode of its punishment, should be affected by the act. The language is general, and embraces, *141 I think, the penalty affixed to the commission of thevcrime as well as the crime itself. For all the purposes of such an offense the act was as completely obliterated as if it had never been passed. The act was to have no effect upon previous offenses, except that where it prescribed or mitigated punishment, such punishment should be applied. The very exception shows that except within the range of the exception contained in the section itself, the offense in all its aspects of definition, commission, indictment, trial and punishment, was. to stand wholly upon the prior law. The very next section, by way of greater caution, and to effectuate the same object, saves pending prosecutions from the effect of the general repeal.
We must, therefore, look at the exception in this section, and see if the act prescribes a mitigated punishment for the offense of murder in the first degree. If it does, the provisions of the act of 1862 apply, and the sentence in this case, which is substantially in conformity to it, may be supported, unless there be. another defect or irregularity to "which I shall presently refer. If it be not a mitigated punishment, then the provisions of the act of 1860 apply, and the sentence in this case, which is wholly different from and inconsistent with the one there prescribed, cannot be supported. The act of 1862, by express enactment, declared that persons convicted of murder in the first degree should suffer death for the same, and by necessary implication and the repeal of the acts of 1860 and 1861, revived the provisions of the revised statutes in regard to the mode of inflicting that punishment, and the time when it should be inflicted. Hence the execution must take place by hanging by the neck within eight weeks from the time of the sentence.
The act of 1860, while it provided by strong and I think necessary implication that sentence of death should be pronounced for a crime punishable with death, did not contemplate that the period of carrying such sentence into effect *142 should be named therein, and expressly required that simultaneously with the sentence of death there should be a sentence of confinement at hard labor in the state prison until the indefinite period should arrive when the punishment of death should be inflicted. Such period could not lawfully arrive' until the lapse of one year after the sentence of death was pronounced, nor at any time afterwards, however remote, until the warrant of the executive should be issued commanding the said sentence of death to be carried into execution.
I am by no means prepared to say that the punishment prescribed by the revised statutes and the law of 1862 was a mitigated punishment, compared with that of the act of 1860. The former was temporary imprisonment followed by violent death; the latter was longer imprisonment, which might continue for life, and might or might not be terminated in the discretion of the governor, after the lapse of a year, by hanging by the neck. One involved the certain infliction of the death penalty, the other its possible permanent postponement. Indeed, it is not entirely clear that an immediate or speedy violent death would be a milder punishment than one postponed for twelve months and preceded by imprisonment.
At all events, it seems to me a punishment of an entirely different character, radically different from that of the act of 1860, and therefore obnoxious to the objection of an ex post facto law. An ex post facto law is not merely a law which punishes as criminal an act which when done was innocent, or punishes with increased severity a crime which at the time of its commission was subject to a milder penalty, but a law which essentially changes the mode or nature of the punishment. It is upon the ground of its essential injustice that such an act comes within the constitutional inhibition and cannot be passed. Audit is essentially unjust and oppressive to impose upon a particular offense a punishment radically different from that previously lawful; *143 because it leaves to the judiciary the ungrateful and impossible task of deciding whether the modified penalty be in reality a mitigated one. In matters involving life and liberty no uncertainty should rest upon such a question, and a radical change in the mode of punishment should be condemned as ex post facto and unconstitutional, unless clearly and indisputably a mitigation of the former punishment.
For this reason I am of opinion that the judgment pronounced upon the prisoner Eatzky was unwarranted by law, and notwithstanding the reluctance felt by every well-regulated mind to discharge a prisoner, who, upon the facts, we must assume was guilty of one of the highest crimes known to the law, I see no alternative except to reverse the judgments of the courts below, and to order the discharge of the prisoner; unless we are authorized, under the provisions of the act of 1863 (chap. 226), upon the ground that the conviction has been legal and regular, and that the error, if any, is in the sentence—to remit the record to the court of oyer and terminer with directions to pass sentence in conformity with the law of 1860.
The act just referred to was amendatory of the revised statutes, and the whole, read together, provided in effect that on affirmance by the supreme court of the judgment appealed from, it should direct the sentence pronounced to be executed, and it should be executed accordingly; and that on reversal by the supreme court of the judgment appealed from, it should either direct a new trial or that the defendant be absolutely discharged—according to the circumstances of the case; “provided, however” (and this is the amendment made by the act of 1863), “that the appellate court shall have power, upon any writ of error, when it shall appear that the conviction has been legal and regular, to remit the record to the court in which such conviction was had, to pass such sentence thereon as the said appellate court shall direct.”
This provision of the revised statutes, although nomi *144 nolly referring only to the supreme court, was intended, as is, I think, sufficiently obvious from the context, especially when considered in connection with the language of the act of 1863, to embrace all appellate courts which should sit in review of the original judgment. We may, therefore, assume that it covers the action of this court. We must further assume that the conviction has been legal and regular; for nothing appears to warrant a contrary presumption, and no bill of exceptions is presented alleging any error on the trial.
The only question that remains is, whether the legislature intended to pass the act in question so as to apply the same to offenses previously committed, and for which indictments had already been found; and if so, whether it was competent for them to do so, or whether the act was designed, and must be construed to operate only upon offenses thereafter perpetrated.
Before discussing that question it is proper to remark that, as the record now stands (and nothing else is properly before us), the sentence was pronounced on the 20th day of April, 1863—four days before the passage of the act of 1863—which took place on the 24th day of April. 1863. This presents to our- view two fatal difficulties with the sentence as it now stands. 1st. That it does riot come within the saving operation of the act of 1863, but for which I think the prisoner would be entitled to an absolute discharge; and 2d. That if the sentence ought to have been pronounced under the revised statutes, it is void as naming a day for execution beyond the eight weeks’ limitation fixed therein as the maximum period which can intervene between the day of sentence and the day of execution.
We cannot, as it appears to me, take notice of the fact suggested, outside of the record, that the sentence of the court was not pronounced till the third day of August, 1863. The record avers the contrary, and if the fact be really otherwise, I see no other mode of introducing it into *145 the record than to remit the proceedings to the court below, ,yith permission to apply to that court to amend the record •ío as to conform to the truth of the case.
We are not, therefore, in a situation, and have not the legal right to affirm this judgment in its present condition; and we must either reverse it absolutely, and direct the dis-', charge of the prisoner, or we must suspend judgment thereon, and remit the proceedings to the court below to enable the people to apply for the amendment indicated.
I am in favor of this latter course; and if it shall be adopted, it remains to consider whether it is advisable at this time to declare our opinion in advance upon the construction and constitutionality of the law of 1863, upon the assumption that the question is likely hereafter to arise upon the amended record.
On the whole, as the question does not now arise, and may perhaps never arise', and has not been fully discussed in the arguments hitherto made, I think it premature to express an opinion upon it at this time. I think further proceedings should be for the present stayed in this court, and the record remitted to the court below, to enable the defendants to apply for an amendment thereof, if they shall be so advised.
Johnson, J., concurred in the views of Hogeboom, J., and was in favor of suspending the proceeding to permit an amendment of the record.
Mullin, J., read an opinion sustaining the sentence.
Judgment reversed, and the record directed to be remitted to the court of oyer and terminer, with directions to sentence the prisoner to suffer death for the crime whereof he stands convicted; and that he be confined at hard labor" in the state prison until such punishment of death shall be inflicted.