[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 408 
When the crime of which the prisoner was convicted was committed it was punishable with death. The prisoner was sentenced to imprisonment in the State Prison at Sing Sing for life. The prisoner must have been sentenced on the theory that the provisions of the act of April 14, 1860, substituting imprisonment for life, for death, as the punishment for arson in the first degree, were intended to apply not only to an offence committed after that act took effect, but also to the offence of which the prisoner had been convicted, committed in 1857, before the passage of the act.
The first section of the act of 1860 declares, that no crime thereafter committed, except treason and murder in the first degree, should be punished with death in this State. The second section makes two degrees of the crime of murder, defining them. The sixth section declares that every person convicted of murder in the second degree shall be sentenced to imprisonment in one of the State Prisons for life. By the second section, it is declared that "Section one, of title one, of chapter one, of part fourth of the Revised Statutes, shall be amended, so as to read as follows: `§ 1. Every person who shall hereafter be convicted, first, of treason against the people of this State; or second, of murder; or third, of arson in the first degree, as those crimes are respectively declared in this title, shall be punished as herein provided.'" The first section of title one, of chapter one, of part fourth of the Revised Statutes, thus amended, originally read thus:
"Sec. 1. Every person who shall hereafter be convicted,
1. Of treason against the people of this State; or, *Page 409 
2. Of murder; or,
3. Of arson in the first degree; as those crimes are respectively declared in this title, shall suffer death for the same."
By the ninth section of the act of 1860, it is declared that the provisions of the act "for the punishment of murder in the first degree, shall apply to the crime of treason; and the punishment of murder in the second degree, as herein provided, shall apply to all crimes now punishable with death, except as herein provided." The tenth section is, "All persons now under sentence of death in this State, or convicted of murder and awaiting sentence, shall be punished as if convicted of murder in the first degree under this act." The eleventh and last section of the act repeals section 25, and eleven other sections, of the Revised Statutes before referred to; section 25 being the section which prescribed the manner of executing capital punishment by hanging. The other repealed sections contained certain regulations in respect to the execution of capital punishment in certain cases, or under certain circumstances.
It is perfectly plain, that the legislature, by the act of 1860, intended to punish crimes of arson in the first degree, thereafter committed, with imprisonment in a State Prison for life; for section 6 of the act provides that punishment for murder in the second degree; and section 9 declares, that the punishment for murder in the second degree, "as hereinprovided, shall apply to all crimes now punishable with death, except," c.; and arson in the first degree was then, by the Revised Statutes, punishable with death. The prisoner was sentenced under the act of 1860, and upon a construction of that act, that the provisions of the act changing the punishment for arson in the first degree from death to imprisonment for life, were intended to apply to a crime of arson in the first degree, committed before the passage of the act, and when the provision of the Revised Statutes punishing the crime with death was in full force. I doubt whether such is the true and reasonable construction of the act. What particularly distinguishes *Page 410 
the question in this case from that in the case of Hartung v.The People (22 N.Y., 95), is that, by the tenth section of the act, it is expressly declared that all persons then under sentence of death, or convicted of murder and awaiting sentence, should be punished as if convicted of murder in the first degree under the act. This section applied to Mrs. Hartung's case. She was under sentence of death, for murder, when the act of 1860 was passed. The question was, whether she could be punished under the act; and it was held that she could not; that so far as the act attempted to subject to the new punishment of death and previous imprisonment at hard labor, persons who had been convicted of murder, it was ex post facto, and void. The act does not expressly declare that the provisions of the act changing the punishment of arson in the first degree should apply to offences committed before the passage of the act. In the absence of express words showing an intention that these provisions should be retroactive, it is not to be presumed that they were intended to be so. (2 Dwarr. on Statutes, 540; Tillman v. Lansing, 4 John., 45; Dask v. Van Kleef, 7 John., 477; Johnson v.Burrell, 2 Hill, 238; Lawrence v. Miller, 2 Comst., 245.) Certainly it is not to be presumed, that the legislature intended to pass an unconstitutional, ex post facto law; and if the provisions of the act changing the punishment of arson in the first degree should be construed to apply to offences committed before the act, it will hereafter be shown that it must also be held that, so far, it was ex post facto and unconstitutional.
The first section of the act is exclusively and expressly prospective. The words are, "No crime hereafter committed," c. I find nothing in the subsequent provisions of the act (except, perhaps, the eleventh section, repealing certain sections of the Revised Statutes, regulating the execution of capital punishment), going to show that the provisions of the act, changing the punishment of arson in the first degree, were intended to be retrospective. The fact that the tenth section expressly declares, that persons who were then under sentence of death, or convicted of murder and awaiting sentence, *Page 411 
should be punished as if convicted of murder in the first degree under the act, certainly goes to show that the provisions of the act preceding the tenth section were intended to be prospective merely. The tenth section would probably not have been inserted in the act, if the preceding provisions of the act had been intended to be retroactive.
The passage of the act of April 17, 1861, reviving and undertaking to reäpply the punishment for murder and for arson in the first degree, in force at the time the act of April 14, 1860 was passed, to offences committed previously to the day that act took effect, certainly does not show that the act of 1860 was not intended to have a retrospective operation; but the passage of the act of April 17, 1861, must certainly be deemed a conclusive legislative construction of the act of 1860, to the effect that that act presently abolished or repealed the provisions of the Revised Statutes prescribing the punishment of murder and of arson in the first degree, so that the prisoner (who was sentenced prior to the passage of the act of April 17, 1861) could not have been sentenced to suffer death under the provisions of the Revised Statutes in force when his crime was committed, whatever may be deemed to be the force or effect of the act of 1861. Nor does it follow that the provisions of the act of 1860, changing the punishment of arson in the first degree to imprisonment for life, should be construed as intended to have a retrospective operation, if that act should be deemed to have repealed the provisions of the Revised Statutes punishing that crime. If the legislature, by the act of 1860, carelessly or unintentionally repealed the law punishing the prisoner's crime, that is no reason why reasonable and well-settled principles of construction should be disregarded for the purpose of punishing it under that act.
If the act of 1860 presently repealed the provisions of the Revised Statutes prescribing the punishment of death for arson in the first degree, and the provisions of the act of 1860, changing that punishment to imprisonment for life, were intended to apply only to offences thereafter committed, the consequence was, that the prisoner's crime was left without *Page 412 
any law punishing it. (Dwarr., 676, 677; State v. Daley,29 Conn., 272, and cases cited by Judge DENIO in the case of Mrs.Hartung.)
As the prisoner was sentenced before the passage of the act of April 17, 1861; considering that the first section of the act of 1860 was expressly prospective; that there are no words of express repeal in the act, except the eleventh section; that the words of the seventh section are, "section one of title one, c., of the Revised Statutes, shall be amended," c.; I think the question was, whether the prisoner could not have been sentenced under the provisions of the Revised Statutes in force when his crime was committed, upon the construction of the act of 1860, that it did not repeal the provisions of the Revised Statutes as to offences committed before its passage; that the amendment by the seventh section and the other provisions of the act changing the punishment of arson in the first degree were intended to apply only to offences thereafter committed, leaving offences committed before the passage of the act to be punished under the Revised Statutes. If the legislature had expressly declared that the amendment by the seventh section was to apply only to offences thereafter committed, such, I think, would have been the construction and effect of the act. I think the question was, from the whole act, whether that was not its reasonable construction, in the absence of any such express declaration. Certainly my doubt would have been, independent of the act of 1861, whether it could properly be said that the act of 1860 does repeal the provisions of the Revised Statutes, punishing treason, murder and arson in the first degree, except so far as the act by the tenth section attempts to apply the new punishment, under the act, of imprisonment for at least one year previous to the execution of the death penalty, to persons then under conviction for murder, and except so far as the eleventh section expressly repeals the sections of the Revised Statutes regulating the manner of the execution of the death penalty, c.
In State v. Daley (29 Conn.), before cited, it would appear from the report of the case that section 6 of the act preventing *Page 413 
the original punishment was not only altered, but expressly repealed by the new act. So in most, if not all, of the cases cited by Judge DENIO in Mrs. Hartung's case, except that ofCommonwealth v. Duane (1 Binn., 601), the original act was expressly or plainly impliedly repealed by the subsequent act presenting the new punishment or penalty; and the case ofCommonwealth v. Duane, I think, was wrongly decided.
No doubt the act of April 17, 1861, was passed upon the careless assumption that this court, in Mrs. Hartung's case, had decided that the act of 1860 had repealed the provisions of the Revised Statutes punishing treason, murder and arson, in the first degree, and that offences committed previous to the passage of the act of 1860 could not be punished under it; whereas I think that the only point that can be said to have been decided in that case was, that, so far as that act attempted by the tenth section to subject to the new punishment of death and previous imprisonment at hard labor, persons already under conviction for murder, it was ex post facto and void. The act of 1861 having been passed upon an erroneous assumption, has increased the doubts and complications resulting from the extraordinary act of 1860, and one might be almost excused for thinking that both acts were mainly designed to punish judges who should unfortunately be called upon to construe and apply them.
But the question presented by the record in this case is, not whether the prisoner might have been sentenced under the provisions of the Revised Statutes to suffer death, or whether, if the judgment should be reversed, and the court can and should award a new trial, and he should be tried and convicted again, he could be sentenced to suffer death under the Revised Statutes or the act of 1861, or both; but the question presented by the record is, whether the sentence to imprisonment for life, which was pronounced upon him under the act of 1860, was legal. I think it was not, because, for reasons before stated, I think the provisions of the act, changing the punishment for arson in the first degree to imprisonment for life, must be *Page 414 
deemed to have been intended to apply only to offences committed after the act should take effect.
If, however, the provisions of the act, changing the punishment of arson in the first degree, should be held to have been intended to apply to offences committed before the passage of the act, in my opinion so far the act should be held to be ex postfacto and void.
I think this is shown conclusively by Judge DENIO in his opinion in the Hartung case; but I will add that a law which increased the punishment with which an act was punishable when committed would be plainly ex post facto, although it might be said, perhaps, that the new law did not change the manner of the punishment; as, for instance, if, when the act was committed, it was punishable with thirty days' imprisonment and the new law declared that it should be punished with forty days' imprisonment; for as to the number of days' imprisonment by which the punishment was increased, the case would be precisely the same as if the act when committed had not been punishable at all, and under the new law the criminal could not be sentenced to any less number of days than were prescribed by it.
So also if an act, when committed, was punishable by thirty days' imprisonment, a subsequent law changing the punishment of the act to thirty stripes or to thirty dollars fine would be plainly ex post facto, for when the act was committed it was not punishable in that manner, and in view of the constitutional prohibition of ex post facto laws, the case would be precisely the same as if the act had not been punishable at all when committed. If you do not hold a law punishing an act in a different manner than it was punishable when committed to be expost facto, irrespective of the question whether the new punishment is or is not more merciful or lenient, you will leave it to the discretion of the legislature and of judges to say whether the new punishment is or is not more merciful or lenient than the old; and such a construction of the constitutional prohibition would impair its value and certainty of protection. *Page 415 
A law, the effect of which is simply to reduce or diminish the punishment with which an act was punishable when committed, cannot be an ex post facto law, because it inflicts no new or additional punishment.
In Fletcher v. Peck (6 Cranch), Chief Justice MARSHALL defined an ex post facto law to be one which makes an act punishable "in a manner in which it was not punishable when committed." Add to this, or which increases the punishment with which the act was punishable when committed, and I think the definition will be as complete, and certain and safe, as can well be made.
It is plain, then, that the moral or philosophical disquisition as to whether imprisonment for life at hard labor is better or more desirable or less severe than death, has really nothing to do with the question whether the act of 1860, assuming that it was intended to have a retrospective operation, is, so far, expost facto or not. Imprisonment for life at hard labor is an entirely different kind or manner of punishment, from punishment by death. The act of 1860 entirely changed the punishment for arson in the first degree. It changed it from death to imprisonment for life. The two punishments have no elements in common. If it should be held that the act of 1860 merely diminished the punishment with which the prisoner's crime was punishable when committed, because imprisonment for life at hard labor is generally considered a more lenient punishment than death, or one which the criminal would prefer to suffer, then it could be held that a law changing the punishment of an act from imprisonment for a certain number of days or months to a fine, or from a certain number of stripes to imprisonment for a certain number of days, was not ex post facto, because the court might think the new punishment more lenient than the old, or that the criminal would prefer to suffer the new punishment. Indeed, as I have before said, if you depart from the principle that a law isex post facto because it punishes the offence in a different manner, or by a different kind of punishment, than it was punishable with when committed, the question whether the law isex post facto *Page 416 
is left to judicial discretion; for a decision of the question must depend upon the opinion of judges, as to whether the new punishment is more severe than the old, or whether the new punishment would or would not generally be preferred by criminals to the old. The construction of constitutional limitations should be left as little as possible to either legislative or judicial discretion.
My conclusion is, then, that the provisions of the act of 1860, changing the punishment of arson in the first degree, were intended to apply only to offences thereafter committed; but if it should be held otherwise, then that those provisions are expost facto and void, so far as they were intended to apply to a crime of arson in the first degree, committed before the passage of the act. In either view of the act, and upon either holding, the judgment of the court below must be reversed.
But an important question remains to be considered, which is, ought this court, upon reversing the judgment, to order a new trial or the discharge of the prisoner? In looking at this question, I think we must assume that the prisoner, if a new trial is ordered, might be sentenced to suffer death under the Revised Statutes, or the act of April 17, 1861, or both, if he could be lawfully tried again, and was tried and convicted; for we must assume that no opinion that this court might now express upon the question whether, if the prisoner should be again tried and convicted, he could be sentenced to suffer death, would prevent such sentence, that question not being raised by the record before us.
Section 24 of the article of the Revised Statutes relating to writs of error on judgments and certioraries in criminal cases (2 R.S., p. 741, § 24), provides: "If the Supreme Court (upon a writ of error) shall affirm such judgment, it shall direct the sentence pronounced to be executed, c. If the Supreme Court shall reverse the judgment rendered, it shall either direct a new trial, or that the defendant be absolutely discharged."
There was no bill of exceptions in this case; but if there had been, it is very clear that, if the Supreme Court had reversed the judgment upon the ground that a wrong sentence *Page 417 
had been pronounced, that court could not have directed the General Sessions to proceed and pronounce the proper sentence. By the statute, the Supreme Court, on reversing the judgment, could only grant a new trial or absolutely discharge the prisoner.
Upon reversing the judgment, this court must either direct a new trial or the discharge of the prisoner; it cannot direct any other judgment to be given on the conviction. This would have been so, had there been a bill of exceptions; a fortiori, where there is none.
Previous to the law giving a defendant in a criminal case a right to a bill of exceptions (2 R.S., p. 736, § 21), a new trial could not be granted on the merits, by any court, in any case of felony. (The People v. The Judges of the Dutchess Oyer andTerminer, 2 Barb., 286; The People v. Comstock, 8 Wend., 549, and authorities there cited.)
But by the common law a new trial could be granted in a case of felony, when there had been a mistrial relating to the regularity of the organization of the court, or of the impanneling of the jury, or, perhaps, conduct of the jury. Thus, in Arundel's case
(6 Coke, 14), where the defendant had been tried by a jury returned from a certain city, instead of a certain parish, and had been convicted, and moved in arrest of judgment on that ground, it was adjudged that the jury ought to have come from the parish, and not the city, and that the trial was insufficient, and a new venire was awarded to try the issue again. So, in the case of The People v. McKay (18 John., 212), where the defendant was indicted, tried and convicted of murder, and moved in arrest of judgment on the ground that the venire which had been issued was a nullity, and the court adjudged that it was a nullity, a new trial was ordered. In his opinion in this case, Chief Justice SPENCER refers to a case as having occurred within his knowledge, where the defendant was tried and convicted of murder, and a new trial was granted on the ground of the misconduct of the jury in separating, after agreeing, and before rendering their verdict. So in the Cancemi case (18 N.Y., 128), since the Revised Statutes, where *Page 418 
the defendant, with his own consent, was tried and convicted of murder by a jury consisting of but eleven jurors, the judgment was reversed and a new trial ordered. There was a bill of exceptions in this case; but the judgment was reversed and a new trial ordered on the record alone.
In all these cases, the new trial was awarded on the ground that there had been no lawful trial; on the ground of irregularity in the impanneling or conduct of or organization of the jury; and on the record alone. In the principal case, the indictment was sufficient; the court at which the defendant was tried was a court of competent jurisdiction; the jury were regularly impanneled, and rendered a lawful verdict; and the judgment, if reversed, must be reversed upon the record alone, and upon the ground alone that a wrong judgment was given upon a lawful and regular verdict; and the question is whether, in such a case, the court should order a new trial. In view of the provision of the Revised Statutes above referred to, expressly authorizing the court, upon reversing the judgment, to either direct a new trial or that the prisoner be discharged, I think the court should not direct a new trial, if the prisoner could plead his former regular trial and conviction in bar of another trial. The circumstance, that the counsel of the prisoner, on moving in arrest of judgment, also asked for a new trial, I regard of no consequence. The constitutional provision is, "No person shall be subject to be twice put in jeopardy for the same offence." (Const. of State, art. 1, § 6.) This provision may be considered as addressed to courts; and, if the prisoner is within its protection, he ought to be discharged, although his counsel did formally ask for a new trial.
The question is, then, whether the prisoner, if the judgment is reversed upon the ground alone that a wrong judgment was given upon a lawful and regular trial and conviction, can constitutionally be tried again. It is clear to me that he cannot. In the case of The People v. Taylor (3 Denio, 97), Judge BRONSON said, "If a wrong judgment be given against a defendant, which is reversed on error (there being no bill of exceptions), the court of review can neither give a new judgment *Page 419 
against him nor send the case back to the court below for a proper judgment" — citing The King v. Bowne (7 Adol. El., 58); Shepherd v. Commonwealth (2 Metc., 449); Christian v.Commonwealth (5 id., 530); and The King v. Ellis (5 Barn. 
Cres., 395). These cases fully establish the rule as stated by Judge BRONSON. In the case of O'Leary v. The People (4 Park. Crim., 187), where the prisoner was regularly tried, and the jury rendered a verdict which would have authorized a judgment as upon a conviction for a simple assault and battery, but did not authorize the judgment which was rendered as upon a conviction for a felony, the Supreme Court, upon reversing the judgment, on writ of error, discharged the prisoner, referring to Judge BRONSON'S opinion in People v. Taylor.
These cases are probably sufficient to show, that a new trial should not be directed in this case; but in view of the provision of the statute, which was not referred to either in People v.Taylor, or the case last cited, and in view of the great importance of the question in this case not only, but in other capital cases, in which the question has arisen, since the act of 1860, I shall examine the question further.
In 1 Inst., 391, a, it is said: "The difference between a man attainted and convicted is, that a man is said convict beforehe hath judgment, as if a man be a convict by confession,verdict, or recreancie. And when he hath his judgment upon the verdict, confession, c., then he is said to be attaint." It is further said: "By a conviction of a felon his goods and chattels are forfeited, but by attainder, that is, by judgment given, his lands and tenements are forfeited and his blood corrupted, and not before." So in Jacob's Law Dictionary (Attainted) it is said: "Attainder of a criminal is larger than conviction; a man is convicted when he is found guilty or confesses the crime before judgment had, but not attainted till judgment is passed upon him." This shows the technical, common-law definition of the word convict or convicted; a felon was convicted by the verdict of a jury; he was attainted by the judgment rendered on the verdict. *Page 420 
One would think, from this common-law definition of the word convict or convicted, that, by the common law, the plea ofautrefois convict implied merely a regular trial and verdict of guilty, or a confession upon a sufficient indictment. I think the books show that this was so. In Darly's case (4 Coke, 40), one Wetheral brought an appeal against Darly of Minden. The defendant pleaded not guilty, and was found guilty of homicide and had his clergy; and afterwards was indicted for murder, and he pleaded his former conviction in the appeal at the suit of the party; and it was adjudged a bar, and thereupon he was discharged, "because a man's life should not be twice put in jeopardy for one and the same offence."
In Vaux's case (4 Coke, 45), it is said: "If a man is convicted either by verdict or confession upon an insufficient
indictment, and no judgment thereupon given, he may be again indicted and arraigned because his life was never in jeopardy,"c. This implies, if the indictment is sufficient, that the conviction is a bar, though no judgment is given upon it. The same case shows that a lawful conviction by verdict on an insufficient indictment, followed by a judgment, is a bar to a second trial until the judgment is reversed. Hawkins (P.C., book 2, ch. 36, § 10) says: "The plea of autrefois convict seems chiefly to depend on the reason, that the party ought not to be brought twice into danger for the same crime. Upon which ground, it seems agreed, that a conviction on an appeal or indictment of burglary or other felony may be pleaded to an indictment or appeal for the same felony." Again he says (§ 15 of same ch.): "But it seems clearly settled that, whenever the record on which a man is convicted of manslaughter and admitted to his clergy, on an indictment or appeal of murder, is erroneous, either in respect of insufficiency in the indictment or for a mistrial,c., so that his life was not in danger at the trial, he cannot plead such conviction and clergy thereon in bar of a second indictment or appeal."
Blackstone (4 Bl. Com., 336,) citing Hawkins, says: "The plea of autrefois convict, or a former conviction for the same identical crime, though no judgment was ever given or perhaps *Page 421 
ever will be, (being suspended by the benefit of clergy or otherwise,) is a good plea in bar."
Chitty says: "In order to plead this plea (autrefois convict) with effect, the crime must be the same for which the defendant was before convicted, and the conviction must have been lawful on a sufficient indictment. And if he has neither received sentence nor prayed the benefit of clergy, this plea is said not to be pleadable, if the former indictment were invalid." (1 Chitty Crim. L., 462.)
In the case of the People v. Barrett (2 Caines, 304), where the prisoner had pleaded to the indictment, the jury been sworn and evidence offered, and the public prosecutor, without the prisoner's consent, had withdrawn a juror because he was unprepared with his evidence, it was held that the prisoner could not afterwards be tried on the same indictment. Held, that he might be tried on another indictment for the same offence (1 Johns, 66), where it appeared that the first indictment was defective.
In the case of the People v. Casborus (13 John., 351), it was held, that the former indictment and trial was no bar where the judgment had been arrested, but this was upon the ground that it was presumed that the judgment was arrested on the ground that the indictment was defective.
In State v. Benham (7 Conn., 414), where the judgment was suspended it was held that the verdict constituted the bar.
In State v. Morrell (2 Yerg., 24), that the verdict was a bar, when the judgment was improperly arrested upon a good indictment.
In Dyer v. Commonwealth (23 Pick., 404), there was a special verdict which did not authorize the judgment entered on it, and the judgment was reversed and the prisoner discharged.
In the People v. Goodwin (18 John., 202), Chief Justice SPENCER said that the rule that no person shall be subject for the same offence to be twice put in jeopardy of life or limb, meant that "no man shall be twice tried for the same offence."
The prisoner, James Shepherd, having been regularly and lawfully tried and convicted on a good indictment, and there *Page 422 
being no bill of exceptions, the authorities leave no room for doubt that he is entitled to the protection of this common-law and constitutional rule.
In Mrs. Hartung's case there was a bill of exceptions, and there was a new trial ordered. It must be conceded that the judgment was not reversed on the bill of exceptions, but it is not probable that the question, whether the prisoner should be discharged or a new trial ordered, was much considered in that case.
My conclusion is, if the judgment against the prisoner, James Shepherd, is reversed, he should be discharged.
DENIO, Ch. J., WRIGHT, SELDEN and ALLEN, Js., concurred, not now passing on the construction of the act of 1860, but on the ground that, if retrospective, it is unconstitutional; DAVIES, SMITH and GOULD, Js., dissented from that portion of the opinion which denies the power of the court to order a new trial, and requires the discharge of the prisoner.
Judgment reversed and prisoner discharged.