Robert McKee, Plaintiff in error, v. The People, &c., Defendants in error.

Where the prisoner committed the crime of murder in the first degree while the law of 1860 was in force (Nov., 1861), and was tried and convicted under the law of 1862 (Feb., 1863), the sentence should be, that the prisoner suffer the punishment of death; and also that he be confined at hard labor in the State prison until such punishment of death be inflicted.

In such case, where the trial and conviction are regular, but the sentence and judgment affirming the same, are erroneous, this court will reverse the judgment and remit the record for proper sentence.

The plaintiff in error was tried and convicted at the February term of the Oyer and Terminer, held in and for the county of Livingston, in 1863, upon an indictment charging him with the crime of murder in the first degree. The offense was committed on the 18th day of November, 1861, and the indictment was presented in October, 1862. After conviction the counsel for the prisoner moved in arrest of judgment:

First. On the ground that there was no law authorizing judgment to be pronounced upon the prisoner for the crime of murder.

Second. That at the time of the commission of the offense, to wit, on the 18th day of November, A. D. 1861, the only sentence that could have been pronounced on a person convicted of the crime of murder, was that he be confined at hard labor in the State prison until the punishment of death should be inflicted, which law had been repealed.

Third. By the law at the time of the commission of the homicide, no person could be sentenced to death for the crime of murder, and by the law as it then was, every person who should be convicted of murder in the first degree should suffer death. The court denied the motion, and on the seventh day of February, 1863, pronounced the sentence of death upon the prisoner, in pursuance of part 4, chap. 1, title 1, of the Revised Statutes, and directed that the same should be executed on the third day of April, then next ensuing. On

the ninth day of March, 1863, a writ of error was brought upon said judgment to the Supreme Court, and at a General Term, on the 16th day of December, 1863, the same was affirmed, and on the 31st day of December in the same year, a writ of error was brought upon the latter judgment to this court.

*Scott Lord,* for the appellant.

I. The Supreme Court erred in sustaining the judgment of the Oyer and Terminer.

1. The homicide occurred while the law of 1860 was in force.

2. The judgment of the Oyer and Terminer was sustained upon false premises.

II. The judgment, being erroneous, should be reversed, and the plaintiff in error be discharged. (*Shepard* v. *The People,* 25 N. Y., 406; *Hartung* v. *The People,* 26 N. Y., 167, 179, 180; 2 R. S., 741, § 24.)

III. Chapter 226 of Laws of 1863, amending § 24 of ch. 2, pt. 4 of the Revised Statutes, has no application to the case before the court.

1. Soon as judgment against the plaintiff in error was perfected, he was entitled to his discharge.

2. The statute of 1863 was passed seventy-six days after the judgment against the plaintiff in error was pronounced and the record signed; and forty-six days after the writ of error was allowed; and twenty-one days after the time fixed for his execution.

3. The statute of 1863 is to be construed as prospective in its operations. This is the established inference in respect to all acts of the legislature, unless the language is too explicit to forbid it. "An act will never be held to be retroactive, particularly when it affects life or liberty, unless such construction is clearly and plainly required by its express words." (*The People* v. *Tibbetts,* 4 Cow., 384; *Sayer* v. *Wisner,* 8 Wend., 661, 663, 664; *Van Rensselaer* v. *Livingston,* 12 Wend., 490; *Batler* v. *Palmer,* 1 Hill, 324, 334; *Johnson* v. *Burrell,* 2 Hill, 238; *Palmer* v. *Conley,* 4 Hill, 374, 2 N. Y.,

182; *Salters* v. *Tobias*, 3 Paige, 338, 344; *Wood* v. *Oakley*, 11 Paige, 400, 403; *Burleigh* v. *Rampacher*, 5 Duer, 183; *Main* v. *Davis*, 32 Barb., 461, 468; *Main* v. *Green*, 32 Barb., 448; *Keeny* v. *Trus. of Brook. Ber. So.*, 33 Barb., 360, 369; *People* v. *Carnel*, 6 N. Y., 463; *Ely* v. *Holton*, 15 N. Y., 595; *Sanford* v. *Bennett*, 24 N. Y., 20; *Hartung* v. *The People*, 26 N. Y., 167, 172; 2 Dwar. on Statutes, 376; 6 Bac. Abr., 370.)

4. The law, as it exists when an action is commenced, must decide the rights of the parties, unless the legislature express a clear intention to vary the relation of the litigants to each other. (*Dark* v. *Van Kleek*, 7 Johns., 477, 501; *Palmer* v. *Conley*, 4 Denio, 374; 2 N. Y., 182; *Jarvis* v. *Jarvis*, 3 Edw., 462; *Main* v. *Green*, 32 Barb., 461; *Hitchcock* v. *Ellis*, 6 Adol. & Ellis, 943; *Paddon* v. *Partlett*, 3 id., 824.)

The statute of 1863 repeals no part of § 24, ch. 2, R. S. (*Conley* v. *Palmer*, 4 Denio., 377; 2 N. Y., 184; *Fortel's Case*, 11 Coke, 56); and the fact that the act in question is an amendment of the Revised Statutes gives it no greater retroactive force. (*Ely* v. *Holton*, 15 N. Y., 595; *Hartung* v. *The People*, 26 N. Y., 172.)

IV. The plaintiff in error, after judgment had been perfected against him (7 Feb., 1863), had the right to have the judgment reversed, and to be discharged. The legislature could not rightfully interpose after judgment, in such a manner as to deprive the prisoner of the full benefit of a writ of error under the existing laws. (*Ratzkey* v. *The People, supra.* See also, *Dark* v. *Van Kleek*, 7 Johns., 477; *Killam* v. *Killam*, Am. Law Reg. (N. S.), vol. 1, p. 28; *Hartung* v. *The People*, 26 N. Y., 167.

*G. J. Davis*, district attorney.

I. The judgment pronounced by the Court of Oyer and Terminer was right:

1. Because it was in accordance with the law existing at the time. By the act of 1860, which law was in force at the time the offense was committed, any person convicted of any crime punishable with death, and sentenced to suffer such

punishment, shall, at the same time, be sentenced to confinement at hard labor in the State prison, until such punishment of death shall be inflicted. And no person so sentenced or imprisoned shall be executed in pursuance of such sentence within one year from the day on which sentence of death shall be passed. (Laws 1860, ch. 410, §§ 4, 5.) The punishment of confinement, &c., was an additional punishment for the crime, to that of death required by the Revised Statutes. (*Hartung* v. *The People*, 22 N. Y., 95.) The punishment of death was fixed and certain, as it was presumable the governor would discharge the duty imposed.

2. By the act of 1862, in force at the time of the sentence, every person convicted of murder in the first degree, shall suffer death. The same act expressly provides that no offense committed previous to the time when this statute took effect shall be affected by this act, except that when any punishment shall be mitigated by the provisions of this act, such provision shall control any judgment to be pronounced after the said act shall take effect, for any offense committed before that time. (Laws 1862, ch. 197, § 1 of amendment, § 2 of act.)

3. The punishment of the crime of murder by such act, is a mitigation of the severity of the punishment prescribed by the act of 1860.

4. By this construction the act of 1862 is not *ex post facto*. It is not a change in the manner of inflicting the punishment of a crime already committed. It is not declaring an act to be a crime, and inflicting a punishment upon the person committing it. Neither is it aggravating the punishment. (1 Black. Com., 46; Story's Com., § 1339, and cases there cited.)

It is competent for the legislature, by a general law, to remit any separable portion of the prescribed punishment. (*Hartung* v. *The People*, 22 N. Y., 105.)

Davies, J. The sentence passed upon the prisoner, by the Oyer and Terminer, was clearly erroneous. We so held in the case of *Ratzkey* v. *The People*, decided in this court, at June Term, 1864. In that case the prisoner was indicted and convicted for the crime of murder in the first degree, committed

in 1861, and while the act of 1860 was in force, and he was tried after the passage of the act of 1862, and a similar sentence was passed upon him to that pronounced upon the prisoner in the present case. We held that but for the saving clause of the act of 1862, the prisoner could not legally have been punished for the crime whereof he had been convicted. The judgment in that case, as in the one now under consideration, was pronounced on the assumption that the prisoner was to be punished according to the act of 1862, which revived the provisions of the Revised Statutes repealed by the act of 1860. We also held, in that case, that in reference to the crime of murder in the first degree, committed after the passage of the act of 1860, and while it remained in force, the offender could be convicted and punished pursuant to the provisions of that act, and that the proper sentence, upon the conviction for that crime, under that act, was that the prisoner should be sentenced to suffer the punishment of death, and should, at the same time, be sentenced to confinement, at hard labor, in the State prison, until such punishment of death should be inflicted. Such a sentence should have been pronounced on the plaintiff in error in the present case. As in the case of Ratzky, the sentence pronounced in this case, and the judgment affirming the same, are erroneous, and must be reversed, and it would follow, from the authority of the case of *The People* v. *Shephard* (25 N. Y., 406), that a wrong judgment having been given, it must be reversed; and that, although the trial and conviction were regular upon such judgment of reversal, the prisoner must be discharged. That decision was founded on the idea that there was not, previous to the act of April 24, 1863, any authority in the appellate court, on the reversal of a judgment wrongfully pronounced, when the trial and conviction were regular either to pronounce the proper judgment or to remit the record to the court where sentence was pronounced, with directions to that court to pass the appropriate sentence, and that in the absence of any such authority, upon the reversal of the judgment, the prisoner was entitled to his discharge.

That act, which was passed and took effect on the 24th of April, 1863, declared that any appellate court, to which a writ of error in a criminal action should have been brought, when it should appear that the conviction had been legal and regular, should have the power to remit the record to the court in which such conviction was had, to pass such sentence thereon as the appellate court should direct. In the case of Ratzky (*supra*), this court reversed the judgment of the Supreme Court, on the ground that the sentence pronounced was not warranted by law, and remitted the record, to pass the appropriate sentence, there being no question made, in that case, but that the conviction had been legal and regular. It is true that it appeared, in that case, that the sentence pronounced upon the prisoner was so pronounced after the act of April, 1863, took effect, but that circumstance was not made a controlling point of the decision. It was, however, deemed important, that the writ of error to this court was brought after the passage of that act, and after it had taken effect. In the cases of *Lowenburgh* v. *The People*, and of *Jefferds* v. *The People*, we had held that the provisions of that act could not be deemed to apply to writs of error pending in this court at the time of its passage. The reason for that ruling was, that there was nothing in the act of the legislature showing an intention to make its provisions retroactive. The power of the legislature so to do cannot be doubted, in any case, where no constitutional security is invaded. And it cannot be successfully maintained that any such guaranty would have been assailed if the act, by its terms, had declared that it should apply to all cases in which an illegal or improper sentence had been then pronounced, and to all writs of error then pending in any court. The only constitutional provision which it is alleged or claimed would have been violated if such had been the terms of the act, is, that the case would then be within the constitutional provision which forbids a person being twice put in jeopardy for the same offense. In the case of Ratzky (*supra*), it was said by the chief judge of this court that a person is said to be put in jeopardy only

when he is a second time tried upon a criminal accusation, but the term has no relation to the reversal of the erroneous judgment and pronouncing a legal one, pursuant to a legal conviction. In the case at bar, it is not questioned that the trial and conviction were regular and legal; and the only ground upon which the judgment pronounced upon such a verdict is sought to be reversed is, that the sentence and judgment pronounced and given were erroneous. That they were unauthorized has been already shown. In the case of Ratzky a similar question arose, and the chief judge, in his opinion, said: The conviction was legal and the sentence only was erroneous. The only question is whether the act, having been passed after the conviction, though before the judgment was given in the Supreme Court, could be applied to the case. I am of the opinion that it could be applied. In this case, the conviction was complete on the rendition of the verdict, but the judgment of the Supreme Court was not given until the act of 1863 had taken effect. It may be conceded that the act of 1863 would not have authorized the Supreme Court, on the reversal of the judgment and sentence of the Oyer and Terminer, to direct that court to pass a legal sentence upon the prisoner; but it does not follow, therefore, that it is not competent for this court to do so upon judgment of reversal. As already remarked, it was competent for the legislature to have made the act retroactive and applicable to all writs of error then pending in any court. But such intention is never inferred, but must be derived from the clear and unquestionable language of the legislature. If the language of the act had been such that the intent of the legislature to make it applicable to writs of error then pending was unquestioned, then it would have been competent for the Supreme Court, upon reversal, to have directed the proper judgment and sentence to have been given. No question can be made as to the applicability of the act in question to a writ of error prosecuted to this court after the act was passed and took effect. That point was expressly ruled in Ratzky's case. It is not perceived what right of the prisoner is invaded by this construction of the

statute. He has been legally tried and convicted of murder in the first degree. The court, in pronouncing sentence or judgment upon that conviction, committed an error in not making the sentence conformable to the existing provision of law. As the law stood at the time the writ of error was taken to the Supreme Court, that court, on reversal of that judgment, had no power to direct the court in which the verdict had been rendered to pass the legal and appropriate sentence. If, therefore, the Supreme Court had reversed such judgment, as the law then stood, the prisoner would have been entitled to his discharge. But the judgment was affirmed, and not reversed, and, therefore, the exigency entitling him to his discharge did not arise. But the matter is presented to this court in an entire different aspect. We reverse the judgments of the Oyer and Terminer and of the Supreme Court, and our duty is, therefore, clearly defined by the legislature to remit the record, and direct the appropriate sentence to be passed. The judgments of the Oyer and Terminer and of the Supreme Court are accordingly reversed, and the conviction being, in the opinion of this court, legal and regular, the record is remitted, to the end that the Oyer and Terminer may pass the same sentence as directed to be passed in the case of Ratzky.

In which all the judges, except Brown, J., concur. Brown, J., dissents. Ordered, that the judgment be reversed, and that the record be remitted for proper sentence.