COMMONWEALTH *vs.* CLARENCE MURPHY.

Essex. March 20, 1899. — October 19, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Resentence of Criminal after Reversal of Sentence on Writ of Error — Jeopardy — Second Punishment for same Offence — Abridgment of Privileges and Immunities.*

A person, who has been sentenced by a court having jurisdiction of the offence of which he is convicted and of the person, and having the right to sentence to the place designated, and who has served a substantial portion of the time for which he was sentenced, may be resentenced if it turns out on a writ of error brought by him that the original sentence was unlawful, although the effect of such resentence will be to compel him to suffer solitary confinement twice, and it will result in his actual confinement for a longer period than the term for which he was sentenced originally.

INDICTMENT for embezzlement. After a reversal of the defendant's sentence upon a writ of error, reported 172 Mass. 264, the case was remanded to the Superior Court, and he was resentenced in that court by *Sherman,* J., who allowed exceptions, which appear in the opinion.

*E. F. McClennen,* for the defendant.

*A. W. DeGoosh,* Assistant Attorney General, for the Commonwealth.

MORTON, J. The defendant in this case was the plaintiff in error in the case of *Murphy* v. *Commonwealth,* 172 Mass. 264. In

that case it was held that the statute under which he was sentenced was unconstitutional so far as it related to past offences, and the sentence which had been imposed was reversed and the case remanded to the Superior Court, under Pub. St. c. 187, § 13, for sentence according to the law as it was when the offence was committed and before the statute under which he was sentenced took effect. The defendant was brought before the Superior Court on January 7, 1899, pursuant to that decision, and resentenced, — the sentence being to the State prison for nine years ten months and twenty-nine days, the first day solitary and the rest at hard labor. Under the previous sentence he had been sentenced to the State prison for not less than ten nor more than fifteen years, the first day to be in solitary confinement. When he was resentenced he had served the solitary confinement, and two years seven months and ten days under the original sentence. Prior to imposing the last sentence the court said that as the defendant had already served the term of solitary confinement he would prefer not to resentence him to solitary confinement if a written waiver thereof was filed by the defendant's attorney. The attorney stated that he did not feel justified in filing such waiver, and thereupon sentence was imposed as aforesaid. The defendant duly excepted to the imposition of the last sentence, and requested that all his rights might be reserved, which was done.

The contention of the defendant is in substance that one who has been sentenced by a court having jurisdiction of the offence, and of the person and the right to sentence to the place designated, and who has served a substantial portion of the time for which he was sentenced, cannot be resentenced if it turns out on a writ of error brought by him that the original sentence was unlawful. He contends in his own case that the resentence constituted a second punishment for the same offence, that he has been twice put in jeopardy thereby, and has been deprived of his constitutional rights.

The statute under which the case was remanded contains no limitation on the power to remand for sentence in case of a reversal for error, but it is manifest that it cannot authorize the imposition of another sentence under such circumstances as would make it an interference with the constitutional rights

of the prisoner.   The question then is, was the effect of the last sentence to put the defendant in jeopardy twice, or to punish him again for the same offence, or to abridge his privileges and immunities as a citizen of the United States?

By jeopardy is meant, we think, lawful jeopardy from the commencement of the proceedings until their termination by a proper judgment and sentence, or acquittal, or what the law regards as such.   It has been held in numerous cases that where, either for want of jurisdiction or from some defect in the indictment, or from some error in the course of the proceedings, the verdict has been set aside or the judgment has been arrested on a writ of error brought by the defendant, or on a motion made by him, and he has been tried again, he was not thereby put in jeopardy a second time, and his constitutional rights were not abridged.   *Commonwealth* v. *Wheeler*, 2 Mass. 172.   *Commonwealth* v. *Peters*, 12 Met. 387.   *Commonwealth* v. *Roby*, 12 Pick. 496, 502.   *Commonwealth* v. *Lahy*, 8 Gray, 459.   *Commonwealth* v. *Gould*, 12 Gray, 171.   *McKee* v. *People*, 32 N. Y. 239.   *People* v. *M'Kay*, 18 Johns. 212.   *State* v. *Walters*, 16 La. An. 400.   *Jones* v. *State*, 15 Ark. 261.   *Turner* v. *State*, 40 Ala. 21.   *Gerard* v. *People*, 4 Ill. 362.   *State* v. *Redman*, 17 Iowa, 329.   *State* v. *Sutton*, 4 Gill, 494.   Cooley's Const. Lim. (3d ed.) 327.   Sedgwick on Stat. & Const. Law, (2d ed.) 572, 573, n. (*a*).   One ground on which such a conclusion has been reached is, that by bringing the writ of error or making the motion he is deemed to have waived any constitutional objection that he might have had to another trial or to the entry of a proper judgment.   1 Bish. Crim. Law, (2d ed.) §§ 672 *et seq.*   If a second trial where the verdict has been set aside or the judgment arrested does not constitute legal jeopardy, it is difficult to see how the fact that a party may have served a portion of the sentence that has been set aside for error on proceedings instituted by him can rightfully object to the imposition of another and a lawful sentence by the court to which the case has been remanded.   In this case the trial and conviction were, for aught that appears, regular and legal in all respects.   The only error was in the sentence.   It would be strange if there was no power anywhere to correct or to authorize the correction of the error on proceedings instituted by the prisoner except at the risk of delivering him from any further

punishment for the offence of which he had been convicted. It is said in *McKee* v. *People*, 32 N. Y. 239, 245, where the case was remanded under a statute similar to ours, that the term "jeopardy" "has no relation to the reversal of the erroneous judgment and pronouncing a legal one, pursuant to a legal conviction." And in *Jeffries* v. *State*, 40 Ala. 381, it was held that a prisoner could not plead *autrefois convict*, if the former conviction had been reversed on proceedings instituted by himself, notwithstanding he had served a part of the term of his imprisonment before the reversal. See also *Jones* v. *State*, 15 Ark. 261. In criminal proceedings the sentence is the judgment, or at least an essential part of it.

Though the sentence in this case was in excess of the jurisdiction, it was not void, but voidable, (*Sennott's case*, 146 Mass. 489; *Ex parte Lange*, 18 Wall. 163, 174,) and if the defendant had completed the term for which he was sentenced, he would have paid the penalty required and could not have been imprisoned or punished again for the same offence. *Commonwealth* v. *Loud*, 3 Met. 328. To that extent the sentence was lawful until reversed. *Sennott's case, ubi supra. Regina* v. *Drury*, 3 C. & K. 193. Except for the statute authorizing the case to be remanded, he would have been entitled to a discharge, not because to resentence him was unconstitutional, but because at common law the court from which the writ of error issued could not itself pronounce the proper judgment or sentence or send back the case to the inferior court to do so. *Shepherd* v. *Commonwealth*, 2 Met. 419. *The King* v. *Bourne*, 7 A. & E. 58. *The King* v. *Ellis*, 5 B. & C. 395. But a judgment and sentence reversed are the same as if there had been no judgment and sentence, (*Regina* v. *Drury, ubi supra*,) and this must be so even if the prisoner has served a part of the sentence. Whether the confinement under the reversed sentence has been longer or shorter can on principle make no difference. Besides, the length of such confinement will depend somewhat at least on the promptness with which proceedings are instituted to secure a reversal. No doubt it would have been competent for the court to order that the last sentence should take effect from the date of the first sentence, (*Jacquins* v. *Commonwealth*, 9 Cush. 279,) but we do not think that it was bound to do so; and though the effect of the resen-

tence will be to compel the defendant to suffer solitary confinement twice, and will result, it is said, in his actual confinement for a longer period than the term for which he was originally sentenced, we do not see, for reasons already given, that the last sentence is rendered invalid thereby. The case is not one of the imposition of a second sentence for the same offence, or of the attempted correction of a sentence after the term has ended at which it was imposed and the court has adjourned without day. See *Commonwealth* v. *Foster*, 122 Mass. 317, 323. But it is a case where the sentence that was originally imposed has been reversed and declared unlawful upon a writ of error brought by the party aggrieved, and the case has been remanded as provided by statute to the Superior Court for sentence according to the ·law as it was when the offence was committed. Cases in regard to the imposition of a second sentence as such, or in regard to the attempted correction of a sentence after the adjournment of the court, or the substitution of one sentence for another, do not apply. The defendant relies upon *Ex parte Lange*, 18 Wall. 163, and *Feeley's case*, 12 Cush. 598. In *Ex parte Lange*, the statute authorized fine or imprisonment, but the court imposed both. The prisoner paid the fine, and after it had been paid, the court at the same term attempted to modify the sentence by changing it to imprisonment and substituting the sentence as thus modified for the original sentence of fine and imprisonment. But the Supreme Court held that the prisoner having satisfied one of the alternative penalties provided by the statute, the sentence could not be changed and the other alternative penalty imposed. Manifestly that case is not like this. *Feeley's case* was much the same. The statute provided fine or imprisonment. The court imposed both, and the prisoner paid the fine and was committed pursuant to the other part of the sentence, and then petitioned for a writ of *habeas corpus* on the ground that he was unlawfully restrained of his liberty. This court granted the writ and ordered his discharge, on the ground that .he had paid the fine and the court below had no power to impose imprisonment. It is manifest that this case also does not help the defendant. The course that was followed in *Murphy* v. *Commonwealth* seems to have been followed in the Supreme Court of the United States, and apparently was not

regarded as putting the prisoner in jeopardy or punishing him twice, or as interfering with his constitutional rights. *Coleman* v. *Tennessee*, 97 U. S. 509, 519. *Reynolds* v. *United States*, 98 U. S. 145, 168, note. *In re Bonner*, 151 U. S. 242, 262.

We do not discover in what has been done anything by which the privileges or immunities of the defendant as a citizen of the United States have been abridged in violation of the Fourteenth Amendment. The equal protection of the laws has not been denied to him, and he has not been deprived of his liberty without due process of law. *In re Converse*, 137 U. S. 624. *Moore* v. *Missouri*, 159 U. S. 673.

The fact that the court in *Murphy* v. *Commonwealth* may have taken a somewhat different view of St. 1895, c. 504, from that taken in *Commonwealth* v. *Brown*, 167 Mass. 144, does not constitute an interference with the defendant's rights.

*Exceptions overruled.*