20 N.J. Super. 65 (1952)
89 A.2d 469
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES R. LAMOREAUX, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 1952.
Decided June 10, 1952.
*67 Before Judges McGEEHAN, JAYNE, and GOLDMANN.
Mr. Walter S. Keown argued the cause for appellant.
Mr. Benjamin Asbell, First Assistant Prosecutor, argued the cause for the State (Mr. Mitchell Cohen, Prosecutor of Camden County).
The opinion of the court was delivered by JAYNE, J.A.D.
The question addressed to us by the present appeal emanates from the following march of events. The defendant was indicted and convicted in the Camden County Court of obtaining money by false pretenses in violation of R.S. 2:134-1. He thereupon prosecuted an appeal to this court in quest of a reversal of the judgment of conviction. The appeal was constructed upon the assignment of seven grounds. We resolved that the judgment should be reversed in consequence of two rulings of the trial judge that we deemed to have been erroneous. The one of present significance related to the denial of the defendant's motion for a judgment of acquittal at the close of the State's case.
Our conclusion was that the evidence adduced by the State was insufficient to establish to a prima facie degree a violation by the defendant of the essential elements of the alleged crime and that the trial judge committed harmful and prejudicial error in the denial of the defendant's motion. The other ruling to which we expressly alluded concerned the admission of evidence of other similar activities by the defendant for the purpose of exposing his criminal intent, which testimony by reason of the lack of proof of the commission of the crime charged was inadmissible. 13 N.J. Super. 99 (App. Div. 1951).
*68 In pursuance of our determination a mandate issued declaring the reversal of the judgment of conviction and directing in the conventional language "that the record and proceedings be remitted to the said Camden County Court to be there proceeded with in accordance with the rules and practice relating to that Court, consistent with the opinion of this Court."
The prosecutor of the pleas thereafter moved for a retrial of the defendant under the same indictment. The proposed undertaking of the prosecutor was immediately resisted by counsel for the defendant upon the insistence that this court having decided that the motion for a judgment of acquittal at the trial (founded upon the insufficiency of the evidence) should have been granted, the indictment should now be dismissed or a judgment of acquittal entered. The legal propriety of the orders denying the applications of the defendant for the dismissal of the indictment and for the entry of a judgment of acquittal constitutes the subject matter of the present appeal.
The question presented to us, as expressed by the defendant, is: "Would not the defendant suffer double jeopardy if retried upon the present indictment?"
The maxim that one may not be twice put in jeopardy for the same offense is expressive of an ancient principle of the common law. The term "jeopardy" appears in the Year Books, although not in the sense of the present day. Kirk, Jeopardy During the Period of the Year Books, 82 U. of Pa. L. Rev. 602 (1934). The principle was comprehended and confirmed by the Magna Charta of 1215. The doctrine of double jeopardy became a rampart or bulwark built with the materials of natural justice to shield the freeman from the oppressive persecutions theretofore available to an autocratic, arbitrary, or tyrannical government.
The limitation "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb" was embodied in the Fifth Amendment to the Constitution of the United States, and such a provision expressed with some *69 variations of phraseology is incorporated in the constitutions of all except about five of the States. We do not have the slightest inclination to deteriorate the wholesome efficacy of the principle in the administration of justice, but like many other common law principles it has over the years developed the contours of greater maturity.
The point of immediate concern is whether the limitational scope of the rule pertaining to double jeopardy as recognized in our State encompasses the situation disclosed by the present appeal.
The inhibition contained in our State Constitution of 1844 (Art. I, par. 10) and transplanted in our new Constitution of 1947 (Art. I, par. 11) reads: "No person shall, after acquittal, be tried for the same offense." It may be of some significance to observe that the inclusion of the phrase "after acquittal" in the pertinent provision of our Constitution appears to have been distinctly deliberate in view of the survey that this phrase is employed in the comparable sections of only about seven other States. "This provision, in itself, goes no further than to forbid the retrial of a person who has been acquitted of an offense. Smith and Bennett v. State, 41 N.J.L. 598 (E. & A. 1879)." State v. Labato, 7 N.J. 137, 143 (1951).
Chief Justice Beasley in Smith and Bennett v. State, supra (at p. 616) stated:
"This result, arrived at on the foundation of the general principles of the common law, is much fortified when we come to a consideration of the provision touching this subject, contained in the constitution of this state. That provision is unlike the cognate regulation contained in the national constitution, or in those of the several states, in the circumstance that it embraces a much narrower field. It is section ten of article one that relates to this subject, and it is in these words, viz., `No person shall, after acquittal, be trial for the same offence.' The expression of immunity in this particular class of cases would seem to give rise to the implication of the exclusion of immunity in all other classes.
A second trial is not interdicted when the first trial has proved abortive by reason of the mistake or misconduct of the judge or jury, or from accident, but only in the one case where the trial has resulted in an acquittal. By the bare force of this phraseology, it may *70 be, that without other helps the law of this state would be placed very nearly in unison with the rule of the common law on this subject, as such rule has been generally construed in the decisions already cited. What interpretation the term `acquittal,' as here used, is to have, whether it is to denote that the defendant has been acquietatus legitimo modo, or has been acquitted in point of fact, irrespective of circumstance or mode in point of law, is a question not now to be considered, for it does not, in the most distant degree, arise, as in the present case there was a conviction. It is sufficient in this case to say that the defendants are not within the class to whom an immunity from a second trial is given by this clause of the constitution."
Vide, Patterson v. State, 50 N.J.L. 421, 426 (E. & A. 1888); State v. Ackerman, 64 N.J.L. 99, 101 (Sup. Ct. 1899); State v. Meyer, 65 N.J.L. 233, 236 (E. & A. 1900); State v. Van Ness, 82 N.J.L. 181, 183 (Sup. Ct. 1912), affirmed 83 N.J.L. 801 (E. & A. 1912); State v. Turco, 99 N.J.L. 96, 104 (E. & A. 1923); State v. Silver, 2 N.J. Misc. R. 479 (Sup. Ct. 1924), affirmed 101 N.J.L. 232 (E. & A. 1925); State v. Di Giosia, 3 N.J. 413 (1950).
A few quotations borrowed from some of the decisions just cited are informational.
"This issuance of a writ of error should not be confounded with the granting of a new trial, which always rests in the discretion of the court. The rule of the English judges was to refuse a new trial after the acquittal of the accused upon an indictment, and the principle underlying that rule is now imbedded in our constitution. But the acquittal there intended does not include the reversal of a conviction for error of law." State v. Meyer, supra.
"In fact, it would seem, from the reasoning of Chief Justice Beasley, in the opinion in the case cited, that nothing but an existing judgment either of conviction or acquittal, so that a plea of autre fois convict, or autre fois acquit can be pleaded, will be a bar to a retrial on the same indictment." State v. Van Ness, supra.
"Chief Justice Beasley in writing the opinion said, at page 616, that the expression of immunity in this particular class of cases in our Constitution, namely, that `no person shall, after acquittal, be tried for the same offense, would seem to give rise to the implication of exclusion of immunity in all cases except acquittal; that a second trial is not interdicted when the first trial has proved abortive by reason of the mistake or misconduct of the judge or jury, or from accident, but only in the one case where the trial has resulted in an acquittal; and that the form of the entry of judgment that a venire *71 de novo be issued is proper, as it truly indicates to the subordinate court the purpose of judgment of this court." State v. Turco, supra.
"To sustain the plea of autrefois acquit, there must be an acquittal of the offense charged in law and in fact." State v. Di Giosia, supra.
Then we recall the familiar Section 136 of the Criminal Procedure Act. L. 1898, c. 237, p. 915; C.S. p. 1863; R.S. 2:195-16; see am. L. 1943, c. 43.
"The entire record of the proceedings had upon the trial of any criminal cause may be returned by the plaintiff in error therein with the writ of error, bringing up the bill of exceptions as signed and sealed in the cause; and on the argument such entire record shall be considered and adjudged by the appellate court. If it shall appear from such record that the plaintiff in error on the trial below suffered manifest wrong or injury, either in the admission or rejection of testimony, whether objection was made thereto or not, or in the charge of the court, or in the denial of any matter by the court which was a matter of discretion, whether a bill of exceptions was settled, signed and sealed thereto, or error assigned thereon, or not, the appellate court shall remedy such wrong or injury and give judgment accordingly, and order a new trial." (Italics ours.)
The foregoing paragraph does not appear in Title 2A, approved December 5, 1951, effective January 1, 1952. Its present counterpart is Rule 1:2-19; 4:2-6.
"(a) In criminal causes, errors apparent on the face of the judgment record shall be reviewable as heretofore. Error in the admission or rejection of testimony, or in the charge of the court, or in the refusal to charge as requested by the defendant, or in the denial by the court of any matter resting in discretion, or in any other ruling or order made during the course of the trial, shall be cause for reversal if specific objection thereto was made and it appears from the entire record of the proceedings had upon the trial that the defendant thereby suffered manifest wrong or injury. The court may, however, notice plain errors affecting substantial rights of the defendant, although they were not brought to the attention of the trial court. If it shall appear, after challenge interposed by the defendant in the appellate court, that the verdict was against the weight of the evidence, the judgment shall be reversed and a new trial ordered. A verdict of a jury shall not be set aside as against the weight of the evidence unless it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion." (Italics ours.)
*72 It is not rashly pretended that every appellate reversal of a judgment of conviction operates as an acquittal and hence effectively forbids the retrial of the defendant for the same offense. It is freely acknowledged by counsel for the defendant in the present case that such would not be the legal consequence if the reversal of the conviction resulted from a mistaken ruling of the trial judge with respect to the admission or rejection of evidence, an erroneous instruction to the jury, or an abuse of judicial discretion. It is, however, proposed that the reversal of the conviction does have such final determinative effect where it results from the lack of evidence of the defendant's guilt.
Initially, we are not persuaded that the denial of a motion for a judgment of acquittal is so intrinsically heterogeneous as to warrant its exclusion from the category of "any other ruling or order made during the course of the trial" which "shall be cause for reversal if * * *" Rule 1:2-19. Essentially the improper denial of such a motion although perhaps based entirely upon the inadequacy of the factual evidence is nevertheless an error of law of the trial judge. Assuredly it is not the function of the trial judge to weigh and determine the facts in a jury trial but where there is an absence of evidence of guilt, it becomes his duty as a matter of law to direct an acquittal.
However, the subject introduced to this court by the present appeal was recently before the United States Supreme Court in Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 318, 94 L.Ed. 335 (1950). From the decision we reproduce the following excerpts:
"The important question presented upon this record is whether the Court of Appeals, when it reverses the District Court because the evidence is not sufficient to sustain a conviction, may direct a new trial where a defendant had made all proper and timely motions for acquittal in the District Court.

* * * * * * * *
Petitioner's contention that to require him to stand trial again would be to place him twice in jeopardy is not persuasive. He sought and obtained the reversal of his conviction, assigning a number *73 of alleged errors on appeal, including denial of his motion for judgment of acquittal. `* * * where the accused successfully seeks review of a conviction, there is no double jeopardy upon a new trial.' Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 462, 91 L.ed. 422, 426, 67 S.Ct. 374. See Trono v. United States, 199 U.S. 521, 533, 534, 50 L.ed. 292, 296, 297, 26 S.Ct. 121, 4 Ann. Cas. 773."
An observance of the course pursued by this defendant is of primary significance in its relation to the attitude of the established principles of double jeopardy.
We have noticed that this defendant after a complete trial before a jury was convicted. So long as the accordant judgment of conviction remains unimpeached, it is the final judgment of the case and protects the defendant from another prosecution for the same offense. This defendant by means of appeal sought the annulment of the trial and resultant judgment. He assigned seven reasons for the extinguishment of the conviction, of which VI reads: "The defendant's motion for a judgment of acquittal at the close of the State's case and at the close of the entire testimony should have been granted."
His request was that in the event the indictment is not dismissed or quashed, then under other points "the defendant should be granted a new trial." In his reply brief the defendant asks "that the verdict of the jury should be reversed."
The adjudications concerning the consequential effect of the reversal of a former conviction made pursuant to the voluntary and affirmative application of the defendant in its relation to the retrial of the defendant for the same offense are exceedingly numerous. Figuratively speaking, to congregate the citations here would be to employ a turbine to crack the nut.
A profusion of decisions has been examined which firmly sustain the principles that (1) the effect of the defendant's appeal is merely to continue the trial under the indictment in the appellate court, and, if reversal of the judgment of conviction follows, the judgment, as well as the *74 record of the former trial, has been annulled and expunged by the judgment of the appellate court, and they are as though they had never been, while the indictment is left to stand with regard to the crime of which the defendant had been charged and convicted, as though there had been no trial; and (2) if the defendant chooses to appeal from the judgment of conviction and to ask for its reversal, he thereby waives, if successful, his right to avail himself of the former judgment which he himself has caused to be nullified. The expression appearing with remarkable redundancy in numerous pertinent opinions is that "the defendant thereby takes the benefit with the burden."
The author of this opinion has conjectured that the following decisions of the swarm examined, each containing a hive of citations, will suffice to disclose the almost universal adoption of the foregoing principles by the courts throughout our nation. Trono v. U.S., 199 U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292 (1905); Ball v. U.S., 163 U.S. 662, 63 S.Ct. 1192, 41 L.Ed. 300 (1896); Stroud v. U.S., 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919); Louisiana v. Resweber, 329 U.S. 459, 61 S.Ct. 374, 91 L.Ed. 422 (1947); People v. Palmer, 109 N.Y. 413, 17 N.E. 213 (Ct. App. 1888); State v. Bradley, 67 Vt. 465, 32 A. 238 (Vt. Sup. Ct. 1895); Commonwealth v. Murphy, 174 Mass. 369, 54 N.E. 860 (Sup. Jud. Ct. 1899); Commonwealth v. Endrukat, 231 Pa. 529, 80 A. 1049 (Pa. Sup. Ct. 1911); State v. Gillis, 73 S.C. 318, 53 S.E. 487 (S.C. Sup. Ct. 1906); Brantley v. State, 132 Ga. 573, 64 S.E. 676 (Sup. Ct. 1909); Perdue v. State, 134 Ga. 300, 67 S.E. 810 (Ga. Sup. Ct. 1910); Hoskins v. Commonwealth, 152 Ky. 805, 154 S.W. 919 (Ky. Ct. App. 1913); Gibson v. Somers, 31 Nev. 531, 103 Pac. 1073 (Nev. Sup. Ct. 1909); Watson v. State, 26 Okl. Cr. 377, 224 Pac. 368 (Okla. Crim. Ct. App. 1924); State v. Killigrew, 202 Ind. 397, 174 N.E. 808 (Ind. Sup. Ct. 1931); Gannon v. People, 127 Ill. 507, 21 N.E. 525 (Sup. Ct. 1889); State v. Billings, 140 Mo. 193, 41 S.W. 778 (Mo. Sup. Ct. 1897); State v. Ash, 68 Wash. 194, 122 *75 Pac. 995 (Wash. Sup. Ct. 1912); Young v. People, 54 Colo. 293, 130 Pac. 1011 (Colo. Sup. Ct. 1913); Clarence v. State, 89 Neb. 762, 132 N.W. 395 (Neb. Sup. Ct. 1911); State v. Kessler, 15 Utah 142, 49 Pac. 293 (Utah Sup. Ct. 1897); Montgomery v. State, 136 Wis. 119, 116 N.W. 876 (Wis. Sup. Ct. 1908).
A panoramic view of the cases in general relating to the subject brings to particular notice the many in which it has been held in the various jurisdictions that a defendant who under an indictment for murder has been convicted only of manslaughter may upon the reversal of the judgment at his instance be retried under the same indictment on the charge of murder.
It is interesting incidentally to observe that in Stroud v. U.S., supra, the defendant was convicted in 1916 of murder in the first degree and sentenced to be hanged. The Circuit Court of Appeals reversed the judgment. 8 Cir., 245 F. 990 (1916). The defendant was again tried on the same indictment in 1917 and the jury found the defendant "guilty as charged in the indictment without capital punishment." [251 U.S. 15, 40 S.Ct. 51.] The defendant sought and obtained a reversal of the judgment and the mandate, similar to that in the present case, commanded "Such further proceedings be had in said cause, in conformity with the judgment of this Court * * *" In pursuance of the mandate the court vacated the former sentence and ordered a new trial. At the ensuing trial the jury found the defendant guilty of murder in the first degree as charged in the indictment, making no recommendation dispensing with capital punishment. Sentence of death was pronounced. On appeal the judgment of conviction was affirmed by the United States Supreme Court.
The author Joel Prentiss Bishop, who wrote several books on the various phases of the substantive as well as the adjective criminal law, was exceedingly critical of the application of the principles hereinbefore stated in cases wherein the reversal eventuated from a lack of evidence of guilt. *76 He nevertheless recognized the existence of the decisional authorities. Said he, "The courts in effect say that he has now been convicted, and wrongly, and if he will consent to the hazard of being convicted rightly, he may have the first wrong  namely, the verdict illegally procured  set aside, and enter into a realization of the second wrong, which consists of being compelled to relinquish a constitutional right or suffer an unlawful hanging or imprisonment. Such on the one hand, is the doctrine of the Constitution; and such, on the other hand, is that of the courts." 1 Bishop on Criminal Law (9th ed.) 772, Sec. 1046.
In Smith v. State, 196 Wis. 102, 219 N.W. 270, 271 (Wis. Sup. Ct. 1928) it was contended on behalf of the defendant below that if the ruling of the trial court at the first trial was to the effect that there was "wanting evidence sufficient to prove a necessary element for conviction," the defendant was thereupon entitled, as a matter of law, to an acquittal rather than to a new trial. The appellate court decided that the plea of alleged former jeopardy interposed at the second trial was properly overruled.
We do not feel justified in breaking away from principles of law so firmly seated in so many precedential adjudications.
Moreover it may be divulged in conclusion that where we have been concerned with reversals for the failure of proof of some essential element of the crime charged, we have reversed and remanded the case and deliberately refrained from making a new trial positively mandatory. The availability of the proof required is within the knowledge of the prosecuting official, whose function it is, in such cases, to resolve whether the indictment should be dismissed or the defendant placed again on trial.
The orders challenged by the present appeal are affirmed.