# GARVEY'S CASE.

*(Supreme Court of Colorado, May 2, 1884—Application for release from Penitentiary on Habeas Corpus.)*

1. HABEAS CORPUS—WILL LIE when the petitioner is confined under the judgment of a Court, to enter which the Court had not jurisdiction—as a judgment not based on a valid verdict of conviction.

2. CRIMINAL LAW—INDICTMENT—THE GREATER INCLUDES THE LESS. Certain crimes, including murder, are arranged in grades, one above another, and each higher offense or grade of an offense, contains all that is embraced in the one next lower, and something more. It is not necessary that an indictment for any offense shall specify the name of the offense, provided it is in all other respects sufficient. In this class of crimes, whatever the offense alleged in the indictment, there may be a conviction of any other if within the words of the allegation—an indictment for murder charges also all the lower grades of felonious homicide, and a conviction for manslaughter may be had upon it.

3. SAME—SAME—SAME—SUBSEQUENT CHANGE OF STATUTE. An indictment for murder was found by the grand jury. Subsequently an act of the Legislature was passed without a saving clause, which rendered it illegal to convict the accused of the crime of murder, but did not affect the law as to the punishment for manslaughter: *Held*, that the accused under that indictment may be tried for the latter offense.

4. SAME—SAME—FORMER JEOPARDY. In such case, the fact that the accused has been tried under said indictment, convicted of murder and judgment pronounced upon the verdict, which judgment was reversed because of error in entering same—the law having been so modified as to forbid it—will not warrant his discharge on the ground of former jeopardy when subsequently tried for manslaughter on the same indictment.

5. SAME—SAME—VERDICT AND JUDGMENT—PRACTICE. The verdict is the foundation of the judgment, and when the latter is reversed because the law did not authorize the former, both are set aside and of no effect—judgment for murder being reversed and the cause remanded for further proceedings, the Court cannot, upon such verdict for murder, enter judgment for manslaughter without a re-trial of the cause. One so convicted will be released from the penitentiary on *habeas corpus*, and remanded to the custody of the sheriff to await trial.

BECK, C. J. The petitioner was indicted for the murder of one George Wolf, alleged to have been perpetrated on the 23d day of May, 1880. The indictment was found by the grand jury on the 15th day of March, 1881, on which he was tried at the special November term of the District Court of Arapahoe county, 1881, found "guily of murder as charged in the indictment," and sentenced to imprisonment for life in the State Penitentiary.

Vol. IV—No. 39

A writ of error to the judgment was prosecuted to this Court, and at the April term, 1883, we reversed the judgment and remanded the cause, for the reason, that after the commission of the offense, the Legislature had so amended the statute concerning murder, as to alter the situation of the prisoner to his disadvantage, without a saving clause as to the repealed provisions, thus making the law *ex post facto* as to the case of the petitioner.

The petition is demurred to by the Attorney General on behalf of the people, and it is stipulated by counsel representing the respective parties, that the cause be heard upon this demurrer, and that the record upon the writ of error, of *Garvey* (the petitioner) v. *The People*, recently heard and determined in this Court, together with the judgment of the District Court of Arapahoe county, subsequently rendered, denying the motion to quash the indictment, and entering judgment upon the former conviction, be considered as a part of the present petition for writ of *habeas corpus*.

Upon the return of the record into the District Court, the petitioner moved to quash the indictment, upon the ground that it was insufficient in law, as appeared from the judgment of reversal. The petition alleges that the Court denied the motion to quash, and gave judgment on the same verdict, without any further trial of the prisoner, that he be confined in the State Penitentiary for the term of eight years. Upon this judgment the prisoner was committed to the penitentiary, where he still remains in confinement, and to be released from which he has sued out, from this Court, the present writ of *habeas corpus*.

The judgment complained of is a judgment for manslaughter.

The grounds of the present application appear to be :

*First*—That the condition of the law applicable to the case of the prisoner at and since the time of his trial for murder, has been such that he could not lawfully be tried for any offense charged in the indictment in question.

*Second*—That the action of the District Court in pronouncing judgment for manslaughter without a trial by jury, was without jurisdiction, and therefore null and void.

Upon the first proposition, it is contended that the repeal of the provisions of the law of homicide, above alluded to,

quashed the indictment, or left in the same condition it would have been if no law authorizing an indictment for murder had ever existed. That if this be true, there could be no record in the District Court upon which punishment for any offense charged in the quashed indictment could be inflicted. The repeal of the statutory provisions had the same effect upon the indictment as if a demurrer thereto had been sustained on the ground that it charged no crime. There could not be a conviction of manslaughter, because it was quashed in toto and not in part only. A demurrer, it is argued, would not have been sustained as to the charge of murder, and overruled as to the charge of manslaughter involved in the allegations constituting murder, but the indictment would have been quashed and the prisoner discharged.

Much prominence is given the proposition, that an indictment, or any pleading under a statute, which is repealed after the filing thereof, is, for all purposes, absolutely null and void.

The act amending the Criminal Code was approved March 1, 1881; and while it did not go into effect until after the filing of the indictment, on the 15th day of March, 1881, still the amendment of the statute did not wholly repeal or annul the indictment. The law of homicide was not repealed. Two sections concerning the punishment of murder were repealed; but no change was made in the provisions relating to manslaughter. This is but a lower grade of the same offense, or a constituent part of it, and necessarily committed in the perpetration of a murder. It is held in this class of cases, that a count, properly framed, for the higher grade, or offense, contains all the essential elements of a count for the minor offense. In illustration of this principle, it was said in *Commonwealth* v. *Harney*, 10 Met., 425, that an indictment for murder or manslaughter contains a full and technical charge of an assault and battery.

But it is further contended that the effect of the legislation referred to, was to *abolish* the offense of murder, so far as the petitioner is concerned; and this being done, he could not be convicted of manslaughter, upon this indictment, for while manslaughter is included in every indictment for murder, there was here no indictment for murder, and it cannot be said that one crime contains another when there is no containing crime,

or that an indictment for murder includes manslaughter, when there is no such offense as murder.

It would seem to be an extravagant proposition, that as to the petitioner, there is no such offense as murder. As stated in *Garvey* v. *The People, supra,* there remained unrepealed of the law of homicide, in addition to the provisions relating to manslaughter and its punishment, the sections defining the crime of murder, providing the form of indictment, and imposing the death penalty upon such as should be convicted. True, the change made was such that the petitioner could not be lawfully convicted of murder, but there existed no space of time wherein the crime of murder was not an indictable statutory offense. The statutory definition of the crime of murder was substantially the common law definition as given by Blackstone and Coke. (4 Bl. Com., *195.) The same was true of the form of the indictment under the statute. It was substantially the common law form.

The statutory definition of manslaughter was the same as defined at common law. (4 Bl. Com., *191.) The law of manslaughter was amended in 1883, but there was a saving clause as to all cases pending, so that the amendment does not affect the petitioner. Now, counsel for petitioner say: "It is admitted that in every valid indictment for murder, voluntary manslaughter is also contained; but not in an indictment that has been quashed, repealed or rendered void as to the murder therein charged."

But the indictment, as a pleading, has never been quashed, repealed, or rendered void, either by legislative action, or by the order of any Court. The fact that circumstances have transpired since the offense was committed, which render the charge of murder therein contained inapplicable to the case of the petitioner, does not necessarily discharge him of manslaughter, which is a lower grade of the same offense. His liability to answer for the latter does not depend alone on the principle that it is an included offense, but that it is charged in the indictment, as well.

We apprehend that the true tests, in such a case, by which to determine the validity of the indictment are: Is the offense for which the conviction is sought, included in the crime charged in the indictment; and if so, is it sufficiently alleged?

Our constitution provides, that in criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him, which is nothing more than was required by the rules of the common law. We have seen that the statutory definitions of murder and manslaughter, as the same remained unrepealed after the legislation of 1881, were synonymous with the common law definitions of the same offenses, and since the statute requires all trials to be conducted according to the course of the common law, except where another mode is pointed out in the Criminal Code, we may safely test the sufficiency of this indictment by its principles.

At common law, the words "murder" and "manslaughter" appear to have been terms employed to designate different grades of the same offense, viz.: the felonious killing of a human being. All that distinguished one grade from the other were the words, "malice aforethought." Bishop Stat. Cr., Sec. 468.

In his work on Criminal Procedure, Vol. 2, Sec. 576, Mr. Bishop says: "Whether murder and manslaughter are to be called two crimes, or one, is matter only of words, not of ideas."

Certain crimes, including murder, were arranged in grades, one above another, and each higher offense, or grade of an offense, was said to contain all that was embraced in the one next lower, and something more. It was not necessary that the indictment for any offense should specify the name of the offense, provided it was in other respects sufficient, and in this class of crimes, whatever the offense alleged in the indictment, there might be a conviction of any other, if within the words of the allegation.

Mr. Bishop says the indictment for the higher form of the offense would almost necessarily be in such language as to include the lower; and, referring to the subject of murder, says: "We have already considered what, in general terms, is the distinction between the indictment for murder and for manslaughter; the former merely requiring some allegations added, which are not in the latter. In other words, the indictment for murder, being founded on the statute which divided felonious homicide into the two degrees of murder and manslaughter, must contain those statutory terms which distinguished the higher from the lower." 2 Bish. Crim Pro., Secs.

576, 540; 1 Bish. Crim. Pro., Secs. 416, 417, 418; 1 Bish. Crim. Law, Sec. 798.

Mr. Wharton illustrates it as follows: "Thus, if A. be charged with feloniously killing B., of malice prepense, and all but the fact of malice prepense be proved, A. may clearly be convicted of manslaughter, for the indictment contains all the allegations essential to that charge; A. is fully apprised of the nature of it; the verdict enables the Court to pronounce the proper judgment, and A. may plead his acquittal or conviction in bar of any subsequent indictment founded on the same facts." 1 Wharton Crim. Law, Sec. 627.

In *McPherson* v. *The State*, 29 Ark., 225, 233, the Court say: " An indictment for murder charges, also, all the lower grades of felonious homicide, and a conviction for manslaughter may be had upon it."

No objection has been raised as to the form of the indictment in the present case, so far as the charge of murder is concerned, and we feel warranted in saying, that if any indictment, in the common law form, contains all the allegations essential to the charge of manslaughter, then the indictment in this case is sufficient to sustain a conviction of that offense. If the proposition of petitioner's counsel was to be conceded, that the amendment of the statute abolished the crime of murder so far as the prisoner is concerned, the force of the proposition is expended when it is declared that he cannot be lawfully convicted of that grade of crime. But murder, as a criminal offense, was not abolished, and being primarily charged in the indictment, and the indictment being sufficient in form, it follows under the authorities cited, that the offense of manslaughter is substantially charged therein.

In so far as the terms descriptive of the offense, in the present case, exceed the description of manslaughter, they do not vitiate the indictment, but may be treated as surplusage. 1 Bish. Crim. Pro., Secs. 478, 479.

It was held in *Reed* v. *The State*, 8 Ind., 200, that in an indictment for a homicide, charging murder, but defective as to that grade of crime, the word " murder " might be rejected as surplusage, and the prisoner put upon his trial for manslaughter. The same rule was announced in *Dias* v. *The State*, 7 Blackf., 20, respecting the words "with malice aforethought."

The indictment in the case at bar, though not defective in form as to the higher offense, or grade of the offense charged, charges an existing statutory grade of homicide, of which the petitioner cannot be convicted.

But there is no force in the suggestion, that if put upon trial for manslaughter, and the evidence should disclose that the killing was perpetrated with malice aforethought, there could be no conviction of the minor offense. This point was expressly adjudged in *Commonwealth* v. *McPike*, 3 Cush., 181, wherein it was held that it is no defense to an indictment for manslaughter that the homicide therein alleged appears by the evidence to have been committed with malice aforethought, and was therefore murder. Also in *Barnett* v. *The People*, 51 Ills., 325, in reference to the subsequent trial of the prisoner, who had been convicted of manslaughter upon an indictment for murder, the Court say: " He could not be convicted on this trial for murder, but a new trial having been granted on the conviction for manslaughter, he might be and was perfectly tried again for the latter named crime. And, although the proof might show that the crime was perpetrated deliberately and with malice, still, after such acquittal the conviction could only be for the lower grade of crime."

The foregoing conclusions and authorities sufficiently answer the propositions urged in behalf of the petitioner, that had a demurrer been filed to this indictment, it must have been quashed *in toto;* that an original trial for manslaughter could not be had thereon; and that if the prisoner had been put to his trial for the minor offense, and the evidence disclosed a case of murder, he must have been discharged.

The proposition that the prisoner has been once in jeopardy, and for that reason could not have been put upon his trial for manslaughter, is equally fallacious. Counsel say if the indictment would support a conviction for manslaughter at all, it would have done so in the first instance, and not being convicted of this crime on the first trial, he cannot be put in jeopardy of it again. If the prisoner had been wholly acquitted, there would be force in this assertion, but the fallacy of the reasoning is exposed by the authority cited in its support, viz : 1 Wharton's Criminal Law, Sec. 551.

Mr. Wharton says: " The rule is that if the prisoner *could*

have been legally convicted on the first indictment, upon any evidence that *might* have been legally adduced, his acquittal on that indictment may be successfully pleaded to a second indictment; and it is immaterial whether the proper evidence were adduced at the trial of the first indictment or not."

The whole section proceeds upon the supposition that the prisoner has been *acquitted* on the first indictment. The fact here is otherwise. The prisoner was *convicted*, and the judgment was reversed because the conviction was illegal.

The only other instance mentioned in this section, as constituting a bar to further proceedings, is, where there has been a conviction on a defective indictment, followed by judgment and a performance of the sentence. This, likewise, is inapplicable to the case of the petitioner.

The cases of *Shepherd* v. *The People*, 25 N. Y., 406, and the *Hartung* case, *supra*, are mainly relied upon in support of the position assumed, that the petitioner cannot be subjected to another trial, but must be unconditionally discharged upon this writ. We agree with the Attorney General and assistant counsel for the State, that the Hartung case may be clearly distinguished from the case at bar. Every step in the Hartung case, from its inception, is shown to have been regular and legal. There was no error in the indictment, verdict or judgment. The conviction and judgment were, in all respects, valid when had and pronounced. The judgment was reversed because the Legislature had subsequently enacted a statute which forbade the execution of the death sentence that had been pronounced. The reversal of the judgment, therefore, was not based upon error in any of the proceedings in Court, but upon matter wholly *de hors* the record. When it is considered that the prisoner might have been executed before the repeal of the law, the cause of the reversal, and which may be termed an accidental circumstance, it is but rational to say that he was once in jeopardy.

But it is asserted that the Hartung case was not so strong for an absolute discharge of the accused, as this case, for the reason that all the proceedings there were legal, whereas every step in this case was illegal, except the indictment, and that, say counsel, was valid when found, but by the repeal of the law, it became mere waste paper.

These conclusions are evidently based on false premises. As before stated, the indictment was not invalidated, as a pleading, by the repeal of the law. And if the proceedings attending the trial were so grossly illegal, as alleged, how, upon reversal of the judgment, they would constitute a bar to another trial, especially in view of the provisions of our constitution, we do not perceive. The admission of the facts assumed, would seem to conclusively establish the converse of the proposition.

Sec. 18, Art. 2, of the constitution, provides as follows: * * * "Nor shall any person be twice put in jeopardy for the same offense. If the jury disagree, or if the judgment be arrested after verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy."

This judgment was reversed for errors of law, which consisted in the trial, conviction and sentence of the petitioner for murder, whereas, his offense under the law, applicable to his case at the time of his indictment and conviction, was manslaughter.

The case of *Shepherd* v. *The People, supra,* does not seem to have involved similar constitutional provisions.

It now only remains to inquire whether the petitioner can be released from the penitentiary upon the present writ.

This inquiry is, we think, answered by divisions one and seven, section 3, of the Habeas Corpus act, General Statutes, p. 532.

The statute provides that if it appear that the prisoner is in custody by virtue of process from any Court legally constituted, he can be discharged only for some of the following causes: "*First,* Where the Court has exceeded the limit of its jurisdiction, either as to the matter, place, scene or person."

"*Seventh,* Where there is no general law, nor any judgment, order or decree of a Court, to authorize the process, if in a civil suit, nor any conviction, if in a criminal proceeding."

We are of opinion that the Court below exceeded the limit of its jurisdiction, in this, that it pronounced the judgment of imprisonment in the penitentiary, without any conviction of the prisoner.

The result of the former trial had been wholly annuled by

this Court, and the cause had been remanded for further proceedings.

It was thereafter, according to the foregoing views, pending in the District Court for trial upon the charge of manslaughter.

The judgment having been reversed without any reservation, and the cause remanded, the verdict of the jury fell with the judgment, and it would seem that no more authority then remained for pronouncing judgment upon such verdict, without submitting the case to another jury, than existed in the first instance to pronounce judgment upon the indictment without a trial of the accused.

It was held in *People ex rel.* v. *Whitson*, 74 Ills., 20, that if the judgment upon which the prisoner is held in custody is merely erroneous, and subject to be reversed on writ of error, he will not be discharged upon writ of *habeas corpus*. But if the Court had no power or jurisdiction to render such judgment, the prisoner should be discharged.

Our conclusion is, that the imprisonment, under the judgment complained of, is illegal, for the reason that the judgment of the District Court is not merely erroneous, but void, and for that reason, and because of the non-observance of the forms of law in the proceedings of the District Court the petitioner must be discharged from the penitentiary. But it appearing to this Court that he stands legally indicted of a felony, the order will be that the petitioner be discharged from the penitentiary, and that he be remanded to the custody of the sheriff of Arapahoe county.

It is further ordered that said sheriff admit the petitioner to bail, upon his executing a bond in the sum of $5,000, with sufficient sureties, and in form and conditioned as required by the *habeas corpus* act, said bond to be approved by the sheriff of Arapahoe county.

*Wells, Smith & Macon*, for petitioner.

*D. F. Urmy, Attorney General*, for the people.