(*Circuit Court of Cook County.*)

## The People of the State of Illinois ex rel. Jeremiah Corridon

### vs.

### R. W. McLaughrey, Warden, etc.

#### (1898.)

1. HABEAS CORPUS—WHEN ISSUED. If a prisoner is committed by the sentence of a court of competent jurisdiction, no other court of competent jurisdiction, or even of superior jurisdiction, can discharge him on *habeas corpus*, unless the judgment upon which he is imprisoned is absolutely void.

2. SAME—DUTY TO REMAND PRISONER TO SHERIFF WHEN DISCHARGED ON HABEAS CORPUS. Where the court by virtue of the statute discharges a prisoner because the trial court has exceeded its jurisdiction or authority, the prisoner should simply be released from his illegal restraint and then be remanded to the custody of the sheriff. In such a case the prisoner was not in jeopardy.

3. VERDICT OF JURY—HOW RETURNED. The method of returning a verdict of a jury in a criminal case at common law stated.

4. VERDICT—DELIVERED AFTER SEPARATION OF JURY. Where a jury in a criminal case was permitted to separate by the consent of the prisoner and the jury agreed upon a verdict finding the defendant guilty and sealed the same and separated, and the verdict was thereafter delivered in open court to the clerk in the absence of the jury, it was held that the proceeding was void and the prisoner having been in jeopardy was entitled to his discharge.

Petition for habeas corpus. Heard before Judge John Gibbons. The facts are stated in the opinion.

*E. J. Batten* and *H. W. Dikeman*, for relator.

*F. L. Barnett*, assistant state's attorney, for respondent.

GIBBONS, J.: —

In this case the prisoner was indicted with others, as I understand it for a burglary. He pleaded not guilty to the indictment, and thereupon a jury was called, empaneled and sworn to try the case. All the testimony was introduced on behalf of the people, and on behalf of the defendant, the arguments of counsel concluded, and the jury instructed re-

specting the law.   The record shows that the jury was permitted to separate by consent of the prisoner and the polling of the jury was waived by him.   The jury, after due deliberation, agreed upon a verdict, finding the defendant guilty as charged in the indictment, sealed the verdict and separated, and it was delivered, in open court, to the clerk the next morning, but the jury was not present, as the jurors had separated the night before and were not again called together in the case.

The able and conscientious assistant prosecuting attorney, Mr. Barnett, frankly admits that if the prisoner in this case was in jeopardy, in the sense that if the supreme court, on a writ of error would reverse the case, and remand the prisoner for trial, and that a plea of former jeopardy could be successfully interposed by the defendant upon such trial, that this court has the power, and it is its duty, to discharge the prisoner from his illegal imprisonment.   In other words, that, while this is not a court of review in habeas corpus proceedings, that, if the case is such that nothing would be left for the supreme court to do but to order the discharge of the prisoner, on reversing the case, or if nothing was left to be done but to file a plea of former jeopardy, and that that plea could be sustained upon the evidence and upon the law, then that this court has the power, and it is its duty, to discharge the prisoner.

There is a good deal of uncertainty and misapprehension obtaining in this jurisdiction respecting the power of the court to discharge a prisoner on habeas corpus.   The true rule is that if the prisoner was committed by the sentence of a court of competent jurisdiction, no other court of concurrent jurisdiction, or even of superior jurisdiction should discharge him on habeas corpus proceedings, unless the judgment upon which he is imprisoned is absolutely void.   It is true that under one section of the Habeas Corpus Act the reviewing court is given power to discharge a prisoner if the trial court has exceeded its jurisdiction or its authority. But, in discharging the prisoner under such circumstances, the court would simply release him from his illegal restraint,

and remand him to the custody of the sheriff, either to give bail (if a bailable case) or to remain in jail until properly tried by a jury, if the trial that he had had was void. Mr. Justice McAllister (a jurist whose knowledge of the law every lawyer at the Chicago bar, and wherever else he is known, holds in the highest esteem) discharged a man on habeas corpus who had been indicted for a felony, waived a jury and consented to be tried before one of the judges of the criminal court. It is safe to assume the question was not raised before Judge McAllister in that case (*People v. Lyons,* 16 Chi. L. News, 320 [1])—that, while it was his duty to release the prisoner from his illegal restraint, it was also his duty to remand him to the custody of the sheriff for another trial; because the trial which he had had was void, as the judge had no power to try him, and, therefore, the man was never in jeopardy. *Garvey's Case,* 7 Colo. 384, s. c. 4 Am. Law R. 254.

Now, if the case before me is one of that nature, then this man was not in jeopardy, and he may again be tried. The court, it is conceded, was legally constituted, and it was a court of competent jurisdiction for the trial of criminals, whether held for felony or misdemeanor. The record shows that a jury was duly impaneled and the trial proceeded in the usual way. Testimony was introduced, counsel were heard, and the instructions of the court given, and everything was perfectly regular up to the time of the separating of the jury. It was late in the day when the case was submitted, and the defendant agreed that the jury might seal their verdict and separate, and he waived the right to poll the jury, but he did not agree that the jury should be discharged or that the verdict should be returned into court in the absence of the jury.

What is the manner in which a verdict must be returned? Not by presenting the written verdict of the jury (although that is customary in this jurisdiction) to the clerk, to be filed in the presence or in the absence of the jury, as the case may be, but the order in which the verdict must be returned is as

[1] Reported in this volume at page 199—Ed.

follows: ''When the jury have come to a unanimous determination with respect to their verdict, they return to the box and deliver it. The clerk then calls them over by their names, and asks them whether they agree on their verdict, to which they reply in the affirmative. He then demands, 'who shall say for them?' to which they answer 'their foreman.' '' That is the common-law way of delivering a verdict, and is the proper way, unless changed by statute. This being done, he commands the prisoner to hold up his hand, and addresses them: ''Look upon the prisoner, you that are sworn; how say you, is he guilty of the felony whereof he stands indicted, or not guilty?'' The foreman then answers ''guilty,'' or ''not guilty,'' according to the conclusion to which the jury have arrived in their consultation. The officer then writes the word ''guilty,'' or ''not guilty,'' on the record, and again addresses the jury: ''Hearken to your verdict as the court hath recorded it; you say that A. B. is guilty (or not guilty) of the felony whereof he stands indicted, and so say you all.'' That is substantially the course of procedure in all the states at the present day; but there are necessarily slight differences in the practice, and each court will pursue its accustomed course. There is no reason to believe that any minute departure from the old forms will vitiate that verdict. Hence it is sufficient in this jurisdiction that the verdict of the jury in writing signed by each juror or by the foreman is returned in the presence of the jury, the clerk then reads it aloud and asks them if this is their verdict, and if they answer in the affirmative it is accepted, but the prisoner may demand the jury to be polled, which is done by the clerk calling upon each juror to answer whether or not the verdict just read was and is now his verdict.

It has been adjudged time and again by courts of the highest respectability that the jury returning the verdict into court is not the rendition of the verdict, that is, that the returning of the paper verdict into court is not the rendition of the verdict of the jury, but that it is the oral interrogatory put by the clerk to the jury and the answer of the jury to the clerk which constitutes a legal verdict. Whether the same

formality is proceeded with as at common law, or the written verdict is returned, as in this jurisdiction, and the clerk interrogates the jury, in either event it has been frequently adjudged that the oral interrogatory and the entering of the verdict on the minute book (of course the filing of the verdict would suffice in our jurisdiction) is the rendition of the verdict.

The petitioner waived the right to poll the jury. He agreed that the jury might seal its verdict and separate, but that is as far as he went. He did not agree that the jury should not again assemble and listen to the reading of the verdict, or to the interrogation of the clerk as to whether or not the verdict returned was their verdict.

The common-law command "Look upon the prisoner, you that are sworn," has a peculiar significance that reaches back and has its foundation in the early history of jurisprudence. "Look upon the prisoner." That is an admonition to the jury to look upon him, probably for the last time, and say whether he is guilty, although they may have signed a verdict finding him guilty. Some juror may say "I agreed to this verdict because I wanted to get home to the bedside of my sick wife or child, but in thinking it over carefully I fear I acted hastily and did wrong." And this man may voluntarily, without being interrogated as to whether that is or is not his verdict, repent and stand up in the jury box and say "I agreed to that verdict but it was because I wanted to reach the bedside of my sick wife, and it is not my verdict." "Look upon the prisoner." Now this admonition has indeed its peculiar significance. There are many instances incident to criminal trials and many passages in history that remind us of the force of that expression as applied to criminal procedure; for example when Paul stood before Felix—he claimed to be a Roman citizen and that it was his privilege under the Roman law, to meet his witnesses face to face, and if they had aught against him that they would there accuse him. So it was when Christ looked upon Peter. He remembered what Christ had said to him, "Before the cock crows thou shalt deny me thrice," and Peter turned aside and wept;

and in the famous trial of Mary, Queen of Scots, she demanded that her accusers be brought to her that she might meet them face to face. There are hundreds of instances in history showing the significance which attaches to this fact, and, in the common parlance of the people, when one hears that another has accused him of some wrongdoing he will say, "He dare not do so to my face."

Coming back to the facts as they appear in the record, this man was in jeopardy. It was just the same as if the court had discharged the jury after the state had rested its case, seeing that there was not sufficient evidence to convict him. The court could not, after the jury was sworn to try the cause, and after any evidence is introduced material to the issue (no matter how slight the evidence) legally discharge the jury. The man is then in jeopardy, and the jury cannot be discharged without his consent, unless for some unforeseen accident. For example if a juror die or is taken suddenly ill, or they are kept out for a length of time, that the court can see that it would be useless for them to remain out longer. But without the consent of the prisoner, except in those cases, there cannot be a discharge of the jury by the court. Petitioner consented to everything that he had a right to consent to up to the very moment of the jury coming together again in his presence and rendering a verdict in open court. He did not consent to waive that formality. Now, then, the discharge of the jury without that consent is just the same as the discharge of the jury by the court at any stage of the proceedings, if it thought the prosecution had failed to make out its case or for any other cause without the consent of the prisoner. The prisoner could have consented, I am inclined to believe, that the jury should separate, and again assemble, but in that case, the judgment would probably be a voidable judgment. In other words the supreme court would doubtless reverse a judgment of that kind, but it would not be a void judgment, because he consented—he was instrumental in permitting the court to commit that error, and the court of review would not say that that judgment was void, because he was instrumental in

rendering it so, and therefore, would reverse the case and remand the prisoner for a new trial. But the court discharged the jury without the prisoner's consent, and that has enabled him to plead his former jeopardy, and as I said before, inasmuch as the state's attorney has well said that if nothing is left to do in this case except to put the man upon trial—admitting that the supreme court would reverse the case, as it undoubtedly would, and nothing was left to do except to put this man on trial again, so as to plead his former jeopardy, that the state will not put him to the trouble of going through that idle formality, and hence this court may as well discharge him as the supreme court.

Besides, let me say, that if I had any doubt about my position I would resolve that doubt in favor of the people. In cases of this kind where the matter of the guilt or innocence of the party is not involved, it is the duty of the court to resolve any doubt arising in favor of the people, because new evidence may be procured before the trial. So it is in this case, if I had any doubt about my position I would remand the prisoner, and compel him to sue out his writ of error in the supreme court, but, entertaining no doubt on the subject, my judgment is, that the prisoner ought to be discharged which is done accordingly.

---

(*Recorder's Court of Chicago.*)